David S. Preminger (DP 1057)
Rose A. Saxe (RS 0463)
Rosen Preminger & Bloom LLP
67 Wall Street
New York, NY 10005
(212) 422-1001

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
VALERIE A. SHORE,

                Plaintiff,

   -against-                                           **COMPLAINT**

PAINEWEBBER LONG-                No. 04 Civ 4152 (DC)(AJP)(ECF CASE)
TERM DISABILITY PLAN, RELIANCE
STANDARD LIFE INSURANCE
COMPANY, PAINEWEBBER
INCORPORATED, AS ADMINISTRATOR
OF THE PAINEWEBBER LONG-TERM
DISABILITY PLAN, and UBS
PAINEWEBBER INC., AS
ADMINISTRATOR OF THE
PAINEWEBBER LONG-TERM
DISABILITY PLAN,

                Defendants.
--------------------------------------------------------x

## I.    PRELIMINARY STATEMENT

1.    This is an action by plaintiff for long term disability benefits pursuant to a long term disability plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff seeks benefits pursuant to the terms of the plan in question as well as other relief.

## II.  JURISDICTION AND VENUE

2. This action is brought by plaintiff pursuant to §§ 502(a)(1)(B) and (a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).  This Court has subject matter jurisdiction pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).  This Court has supplemental jurisdiction over any other claim pursuant to 28 U.S.C. § 1367(a).

3. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rules 58 and 65 of the Federal Rules of Civil Procedure.

4. Venue is based on ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## III.  PARTIES

5. Plaintiff Valerie A. Shore is a natural person who resides in California.

6. Defendant PaineWebber Long-Term Disability Plan (the "Plan") is, and at all times relevant hereto was, an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

7. Defendant Reliance Standard Life Insurance Company ("Reliance") is an insurance company which is licensed to and does conduct business in the State of New York.  At all relevant times, Reliance was the Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  At all relevant times, whether or not Reliance was the Administrator, it was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

8. Defendant PaineWebber Incorporated ("PaineWebber") is a corporation which is licensed to and does conduct business in the State of New York.  If Reliance was not the Administrator of the Plan at all relevant times, then PaineWebber was the

Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and as such was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

9.   Defendant UBS PaineWebber Inc. is a corporation which, upon information and belief, acquired PaineWebber subsequent to the denial of plaintiff's long term disability benefits. Plaintiff is unaware of the current corporate status of PaineWebber, and if PaineWebber no longer exists as a separate corporate entity, then UBS PaineWebber Inc. is the Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and as such was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

**IV.   FACTS**

10.   In 1997 plaintiff was employed by Correspondent Services Corp., a subsidiary of PaineWebber in New York, with the title of Ethics Officer/Director of Continuing Legal Education, and an annual salary of $75,000 and a guaranteed minimum annual bonus of $50,000.

11.   As Ethics Officer and Director of Continuing Education, plaintiff created ethics and continuing education programs for the approximately 140 firms that cleared their business through PaineWebber, was responsible for assisting these firms with audits by the Securities Exchange Commission or the National Association of Securities Dealers ("NASD"), hosted a weekly telecast serving these clients, and was required to be up to date on applicable rules and regulations, and new facets and products of the finance industry. Plaintiff regularly attended seminars, Securities Industry Association, SEC and NASD events, and maintained relationships with legal firms specializing in

securities and employment law. Plaintiff also managed a national marketing support center for approximately thirty different investment products and produced national advertising, public relations, marketing campaigns and promotional events created to attract PaineWebber's approximately 140 clearing clients.

12. Plaintiff's daily working hours were, at a minimum, from 8:00 am to 6:00 pm. She also frequently worked from home at other than normal business hours, principally by computer and telephone.

13. Plaintiff's daily work activities included frequent computer work, making telephone calls for six to ten hours a day, and attending conferences, meetings and interviews within New York and out of state. Plaintiff was required to attend frequent ethics seminars and conferences within New York and out of state, which often required that she sit for the entire day. She was also responsible for hosting similar conferences, which included visiting various sites to determine where to hold the conferences, meeting with potential speakers, as well as coordinating all aspects of the conferences and attending the conferences. Plaintiff also hosted luncheons and dinners in New York and out of state.

14. Plaintiff was also directly responsible for coordinating the printing of sensitive materials, which involved lifting, carrying and unpacking boxes, editing the material, shredding confidential material, and working closely with the printing companies.

15. Plaintiff traveled by subway, bus, ferry or taxi to get to work and to meetings with clients. She traveled frequently to PaineWebber's offices in New Jersey

4

and San Francisco, and regularly drove long distances to visit regional clients. When attending conferences or meetings out of state, plaintiff traveled by airplane.

16.     While plaintiff was employed at Correspondent Services Corp., PaineWebber maintained the Plan, a group long term disability plan.

17.     At all relevant times, plaintiff has been and is a participant in and beneficiary of the Plan within the meaning of ERISA §§ 3(7) and (8), 29 U.S.C. §§ 1002(7) and (8).

18.     At all relevant times, the Plan was insured by Reliance under a policy issued in 1994 (the "Policy"), making Reliance liable for any benefits owed by the Plan to participants and/or beneficiaries of the Plan.

19.     Plaintiff was not provided with a copy of the Policy during her employment with Correspondent Services Corp.

20.     The only Plan document that plaintiff received during her employment with Correspondent Services Corp. was a summary of the terms of the Plan.

21.     That summary does not contain any information about filing or appealing a claim for benefits or about plaintiff's rights as a participant of the Plan. Instead, the section titled "Your Rights as a Plan Participant" states that "[f]or further information about filing or appealing a claim and your rights as a Plan participant, please refer to the *Legal and Administrative Overview* booklet."

22.     Plaintiff never received a copy of this Legal and Administrative Overview booklet.

23.     The Policy provides for a long term disability ("LTD") benefit payable through age sixty-five, commencing after a 180 day elimination period. The monthly

LTD benefit is 60% of the Plan participant's average monthly salary from the three prior years, up to a maximum benefit of $12,500 per month.

    24.    The Policy defines "Totally Disabled" and "Total Disability" as follows:

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:

    (1)    during the Elimination Period, an Insured cannot perform each and every material duty of his/her regular occupation; and

    (2)    for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;

    (a)    "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period; and

    (3)    after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

    25.    On or about January 15, 1999, plaintiff injured her back while moving heavy boxes at work.

    26.    Plaintiff has been unable to return to work since the date of her injury because of persistent lower back pain, numbness in her feet and pelvis and urinary tract problems resulting from the back injury.

6

27. Plaintiff was subsequently diagnosed as suffering from lumbar radiculopathy caused by a herniated disk and a bulging disk at the lumbosacral level.

28. Plaintiff's painful symptoms are exacerbated if she sits or stands for more than thirty or forty minutes at a time. Plaintiff's condition requires that she change her position frequently. Plaintiff is able to walk for only short distances. She spends much of the day lying down, as that relieves the pain somewhat.

29. Plaintiff has been prescribed pain medication for her injuries, including Celebrex, Naprosyn, Valium, Flexeril, Ambien, Vicodin, and Hydrocodone. Many of these medications cause drowsiness and interfere with plaintiff's ability to concentrate.

30. On or about June 29, 1999, plaintiff applied for LTD benefits, which were approved by Reliance on or about August 18, 1999 and paid at a rate of $4239.05 per month, representing sixty percent of plaintiff's average monthly salary for the previous three years less the benefits to which plaintiff would be entitled from the Social Security Administration.

31. Following the approval of plaintiff's LTD benefits, plaintiff provided information regarding her medical condition to Reliance as and when requested by Reliance.

32. On or about April 29, 2000, an administrative law judge approved plaintiff's claim for disability benefits from the Social Security Administration, finding that plaintiff became disabled on January 15, 1999.

33. The administrative law judge expressly found that plaintiff's subjective description of her limitations was credible, and concluded that plaintiff "is able to lift or

carry up to only 10 pounds, and to sit for up to only two hours and stand or walk for up to only two hours in an eight-hour workday."

34. Plaintiff provided a copy of this decision to Reliance.

35. Nonetheless, by letter to plaintiff dated June 19, 2000, Reliance stated that it no longer considered plaintiff totally disabled within the meaning of the policy.

36. Reliance stated that plaintiff was able to perform a sedentary occupation.

37. Reliance ignored the material duties of plaintiff's regular occupation when it characterized her occupation as sedentary in reliance on the Department of Labor's occupational description for a "Director, Educational Programs."

38. The occupational description for a "Director, Educational Programs" utilized by Reliance lists the following "tasks":

> "1.  Cooperates with business, civic, and other organizations to develop curriculums to meet needs and interest of students and community.
>
> 2.  Interviews and selects staff members and provides in-service training for teachers.
>
> 3.  Prepares budget and determines allocation of funds for staff, supplies and equipment, and facilities.
>
> 4.  Analyzes data from questionnaires, interviews and group discussions to evaluate curriculums, teaching methods, and community participation in educational and other programs.
>
> May also include:
>
> 1.  May direct preparation of publicity to promote activities, such as personnel recruitment, educational programs or other services.
>
> 2.  May specialize in elementary, secondary, adult, or junior college education."

39. The "physical requirements" section of the occupational description utilized by Reliance indicates that the position described is sedentary, and involves

8

"lifting, carrying, pushing, pulling 10 Lbs. occasionally.  Mostly sitting, may involve standing or walking for brief periods of time."

40. This occupational description does not accurately describe the material duties of plaintiff's occupation as the Ethics Officer/Director of Continuing Legal Education at Correspondent Services Corp.

41. Plaintiff's occupation was not sedentary.  As set forth in paragraphs 11-15 above, she was required to: coordinate, host and attend frequent conferences, seminars and meetings; travel extensively; and lift and carry heavy boxes while coordinating the printing of sensitive material for which she was personally responsible.

42. In reaching its conclusion that plaintiff could perform the material duties of her occupation, Reliance also ignored the opinions of plaintiff's treating physicians that she was unable to work in even a sedentary occupation.

43. On "Physical Capacities Evaluation" forms completed by plaintiff's treating physicians and physical therapist at Reliance's request, they indicated that plaintiff could sit for "less than six [hours] per day."  This was the lowest degree of capacity that could be indicated on those forms and does not, therefore, indicate that plaintiff could sit for even six hours per day.

44. Plaintiff's occupation frequently required her to sit for more than six hours a day while working at the computer or on the telephone, or while traveling.

45. After receiving Reliance's June 19, 2000 letter stating that she was no longer disabled within the meaning of the policy, plaintiff retained counsel, who sought and obtained an extension of time to appeal the termination of her benefits.

46. On November 20, 2000, plaintiff's then-counsel timely appealed the termination of benefits.

47. In the appeal, plaintiff's then-counsel included a description of plaintiff's duties as Ethics Officer/Director of Continuing Legal Education, a list of the medications plaintiff had been prescribed since her injury, an affidavit from plaintiff describing the nature of her injuries and her residual functional capacity, and additional records of plaintiff's medical treatment since the June 2000 termination substantiating plaintiff's claim of total disability.

48. By letter dated February 16, 2001, Reliance denied plaintiff's appeal.

49. Reliance's February 16, 2001 letter stated that although plaintiff's "job requires a great deal of physical exertion, her occupation is classified as sedentary by the United States Department of Labor's Dictionary of Occupational Titles." Reliance also stated that plaintiff's commute to and from work is not considered part of the material duties of her occupation, and that air travel "is essentially considered a sedentary activity."

50. Citing a claim review by Dr. William Scott Hauptman (who is a gastroenterologist, not a neurologist or an orthopedic specialist), Reliance concluded that plaintiff was able to perform the requirements of a sedentary occupation.

51. Reliance based its conclusion that plaintiff was able to perform the material duties of a sedentary occupation on a full time basis on two facts: (1) its erroneous view that plaintiff's pain is controlled with medication, and (2) the fact that two doctors noted that plaintiff "was able to mount and dismount the examination table without any assistance."

52.　Reliance's conclusion that "the medical records do not document a condition so severe [that] it would render [plaintiff] unable to perform the material duties of her occupation" ignores the material duties of plaintiff's occupation and the opinions of plaintiff's treating physicians that plaintiff was unable to work at even a sedentary occupation.

53.　Plaintiff has exhausted the Plan's claims procedures.

## V.　CLAIMS FOR RELIEF

### First Claim for Relief

54.　Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 53 above as if fully set forth herein.

55.　Plaintiff has at all times relevant herein remained disabled under the Plan's definition of "total disability" and "totally disabled."

56.　Pursuant to the Plan and/or pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), plaintiff is entitled to retroactive and prospective LTD benefits.

### Second Claim for Relief

57.　Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

58.　Pursuant to the Plan and/or pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff is entitled to interest on all unpaid LTD benefits she should have received from June 19, 2000 until the entry of judgment herein.

### Third Claim for Relief

59.　Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 53 above as if fully set forth herein.

60.  Reliance's termination of plaintiff's LTD benefits based on a job description that does not correspond to the actual material duties that plaintiff performed, its erroneous characterization of plaintiff's occupation as "sedentary" in reliance upon that job description, its failure to assess plaintiff's ability to perform the material duties of her job, and its failure to address the medical reports submitted by plaintiff's treating physicians deprived plaintiff of the "full and fair review of the claim and its denial" as required by 29 C.F.R. § 2560.503-1(g)(1).

61.  Should the Court determine that, based on the claims procedure record, plaintiff has not established her entitlement to LTD benefits, the claim should be remanded to Reliance to provide plaintiff with both an initial determination of her claim and, if denied, a review of her claim which are both in compliance with applicable laws and regulations.

## PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment as follows:

1.  Declaring plaintiff to be entitled to monthly LTD benefits retroactive to June 19, 2000;

2.  Ordering Reliance to pay plaintiff those retroactive benefits;

3.  Declaring plaintiff to be entitled to monthly LTD benefits prospectively;

4.  Ordering Reliance to pay plaintiff those prospective benefits;

5.  Declaring plaintiff to be entitled to interest at an appropriate rate on the retroactive benefits from June 19, 2000 to the date of entry of judgment herein;

6.  Establishing the rate(s) of interest to be applied;

      7.      Ordering defendants to pay plaintiff that/those rate(s) of interest on the retroactive benefits;

      8.      Awarding plaintiff her costs, disbursements and expenses herein;

      9.      Awarding plaintiff her attorney's fees herein pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and

      10.      Awarding plaintiff such other and further relief as to this Court may seem just and proper.

Dated:    New York, New York        Rosen Preminger & Bloom LLP
            June 2, 2004                Attorneys for Plaintiff

                                        By:_____/s/_____
                                            David S. Preminger (DP 1057)
                                            Rose A. Saxe (RS 0463)
                                            67 Wall Street
                                            New York, New York 10005
                                            (212) 422-1001