UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| VALERIE A. SHORE | : CIVIL ACTION |
|  | : |
| vs. | : NO. 1:04-4152-DC |
|  | : |
| RELIANCE STANDARD | : |
| LIFE INSURANCE COMPANY, et al. | : |

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

Defendants, Reliance Standard Life Insurance Company (Reliance Standard), UBS Financial Services Inc. Long Term Disability Plan (incorrectly identified as PaineWebber Long Term Disability Plan) and UBS Financial Services Inc. (incorrectly identified as PaineWebber, Incorporated or UBS PaineWebber, Inc.) (collectively "defendants"), by and through their undersigned counsel hereby assert the following Statement of Material Facts.

1. Plaintiff initiated this lawsuit for benefits under Reliance Standard's group long term disability policy number LSC097,614 (the "policy"). A true and correct copy of the policy is attached hereto as Exhibit "A."

2. Plaintiff seeks retroactive and prospective benefits, interest and fees and costs. See Complaint, a true and correct copy of which is attached hereto as Exhibit "B."

3. The policy was issued to plaintiff's former employer, Paine Webber Group, Inc., as part of its employee welfare benefit plan. See Exhibit "A."

4. The policy and plaintiff's claims are governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*

5. The policy contains three provisions that are particularly relevant to plaintiff's claim and this lawsuit.

6. First,

**LEGAL ACTIONS:** No legal action may be brought against us to recover on this Policy within sixty (60) days after written proof of loss has been given as required by this Policy. No action may be brought after three (3) years (Kansas, five (5) years; South Carolina, six (6) years) from the time written proof of loss is received.

Exhibit "A," p. 5.1. (Emphasis in original).

7. Second,

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the plan. The claims review fiduciary has the discretionary authority to interpret the plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

Exhibit "A," p. 5.0.

8. Third,

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
   (1) during the Elimination Period[1] and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;
       (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness, an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An insured who is Partially Disabled will be considered Totally Disabled except during the Elimination Period;
       (b) "Residual Disability" means being Partially Disabled during the Elimination period. Residual Disability will be considered Total Disability; and

---

[1] The Elimination Period is a period of 180 consecutive days, beginning on the date of disability, during which plaintiff must demonstrate total disability but during which benefits are not payable. Exhibit "A," 2.0.

2

           (2)    after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training, or experience will reasonably allow. We consider the insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

Exhibit "A," p. 2.1.

9.    According to plaintiff's application for benefits, she was employed as an Ethics Officer/Director of Continuing Education through January 15, 1999 and was unable to report to work beginning January 19, 1999, due to a work-related injury. (AR 273)[2].

10.    She reportedly injured her back while lifting and dragging a box in her office. (AR 273).

11.    Plaintiff reported that the injury forced her to stop working because she suffers from "sleepy and unclear thinking while on pain killers/medication, extreme pain sitting, standing, walking, unclear while on pain killers, nerve pain right leg and feet, urinary problem, numb foot and buttock and pelvic area." (AR 273).

12.    According to Dr. Main, plaintiff's treating physician, she had been diagnosed with a lumbar herniated disc L4-L5 which resulted in symptoms of low back pain radiating down her left leg. (AR 505).

13.    Dr. Main reported that this injury was a result of plaintiff's January 15, 1999 work-related incident. (AR 505).

14.    Surgery was not expected in the near future; however, plaintiff was referred to physical therapy, a psychiatrist and to acupuncture treatment. (AR 505-506).

---

[2] All AR references are to the administrative record, a copy of which is attached hereto as Exhibit "C."

15. Dr. Main reported that within an eight hour work day, plaintiff could stand and sit on an alternating basis, 1-3 hours each. He further indicated that she could occasionally bend at the waist, squat at the knees, climb, reach above shoulders, kneel, crawl, use foot controls, drive and lift and/or carry at a sedentary level. (AR 506).

16. Dr. Main expected that plaintiff would reach maximum medical improvement in 3-4 months, pending further review. (AR 506).

17. On August 18, 1999, Reliance Standard approved plaintiff's claim for benefits. (AR 214-215).

18. After continued review, Reliance Standard determined that as of June 19, 2000, plaintiff was no longer entitled to disability benefits and discontinued payments. (AR 266-268).

19. Plaintiff was advised of her right to appeal and she did so with the assistance of counsel on July 21, 2000. (AR 263-265).

20. On appeal, plaintiff questioned the decision to discontinue benefits and also questioned the manner in which benefits were calculated. (AR 263-265).

21. On September 18, 2000, Reliance Standard forwarded a copy of the entire administrative record to plaintiff's counsel and granted an additional sixty days for plaintiff to file any documentation which she believed would support her claim for continued benefits. (AR 246-247).

22. Plaintiff did submit additional documentation, many of which were duplicates of medical records already in the claim file. (AR 43-187).

23. After additional review of all of the documents within the claim file (both those initially submitted and those received on appeal), Reliance Standard upheld its determination to discontinue benefits. (AR 5-11).

5

24. More than three years passed between Reliance Standard's final determination on plaintiff's claim and the filing of this lawsuit. (AR 5-11). See also, Exhibit "B."

25. Plaintiff's lawsuit is time barred by the contractual limitation period contained in the policy. See Exhibit "A," p. 5.1.

WHEREFORE, defendants respectfully request judgment in their favor and against plaintiff on all claims.

        RAWLE & HENDERSON, LLP

        By:_____/s/_____
         Joshua Bachrach, Esquire
         Heather J. Holloway, Esquire
         Attorneys for Defendants
         The Widener Building
         One South Penn Square
         Philadelphia, PA 19103

Date: January 11, 2005

5