## <u>Table Of Contents</u>

<u>Page</u>

Table of Authorities ....................................................................................................i

Introduction ...............................................................................................................1

I.    Procedural History ...........................................................................................2

II.    Policy Requirements ........................................................................................4

III.    Plaintiff's Lawsuit is Barred ...........................................................................5

IV.    Medical Records ..............................................................................................8

V.    Legal Argument ..............................................................................................16

     A.    Summary Judgment Standard ...............................................................16

     B.    Standard of Review................................................................................16

     C.    Determination of Plaintiff's Disability Claim...................................18

          1.    Plaintiff must demonstrate total disability from her occupation...........18

          2.    Plaintiff did not demonstrate continued disability ...............................22

VI.    Conclusion .....................................................................................................25

## Table Of Authorities

Page

Cases

*Abnathya v. Hoffmann-LaRoche, Inc.,*
  2 F.3d 40 (3d Cir. 1993).................................................................................................. 18

*Anderson v. Liberty Lobby,*
  477 U.S. 242, 106 S.Ct. 2505 (1986)............................................................................... 16

*Anderson v. Operative Plasterers' & Cement Mason's Int'l. Assoc.,*
  991 F.2d 356 (7th Cir. 1993) ........................................................................................... 25

*Black & Decker Disb. Plan v. Nord,*
  123 S.Ct. 1965 (2003)...................................................................................................... 23

*Burke v. Kodak Ret. Income Plan,*
  336 F.3d 103 (2d Cir. 2003)............................................................................................. 25

*Celotex Corp. v. Catrett,*
  477 U.S. 317, 106 S.Ct. 2548 (1986)............................................................................... 16

*Chandler v. Raytheon Employees' Disability Trust,*
  53 F.Supp.2d 84 (D. Mass. 1999), *aff'd* 2000 W.L. 800 788 (1st Cir. 2000)........................ 24

*Cook v. Liberty Life Assurance Co.,*
  320 F.3d 11 (1st Cir. 2003).............................................................................................. 24

*Dodson v. Woodmen of the World Life Ins. Soc'y,*
  109 F.3d 436 (8th Cir. 1997) ............................................................................................. 7

*Elliott v. Sara Lee Corporation,*
  190 F.3d 601 (4th Cir. 1999)............................................................................................ 24

*Firestone Tire & Rubber Co. v. Bruch,*
  489 U.S. 101, 109 S.Ct. 948 (1989)............................................................................. 16, 17

*George v. First UNUM Life Ins. Co.,*
  1996 U.S. Dist. LEXIS 18062 (S.D. N.Y. 1996)................................................................ 18

*Jordan v. Northrop Grumman Corp.,*
  370 F.3d 869 (9th Cir 2004) ............................................................................................ 22

*Kinstler v. First Reliance Standard Life Ins. Co.,*
  181 F.3d 243 (2d Cir. 1999)..................................................................................... 17, 20, 21, 22

*Leahy v. Raytheon Co.,*
   315 F.3d 11 (1st Cir. 2002)..................................................................... 24

*Locher v. Unum Life Ins. Co.,*
   389 F.3d 288 (2d Cir. 2004)................................................................... 18

*Lugo v. AIG Life Ins. Co.,*
   852 F. Supp. 187 (SDNY 1994)............................................................... 6

*Madden v. ITT Long Term Disability Plan,*
   914 F.2d 1279 (9th Cir. 1990) ............................................................... 25

*Manginaro v. The Welfare Fund of Local 771,*
   21 F. Supp.2d 284 (SDNY 1998)........................................................ 5, 6, 7

*McMahon v. Digital Equipment Corp.,*
   162 F.3d 28 (1st Cir. 1998).................................................................... 20

*Miller v. United Welfare Fund,*
   72 F.3d 1066 (2d Cir. 1995)................................................................... 18

*Pagan v. NYNEX Pension Plan,*
   52 F.3d 438 (2d Cir. 1995)................................................................ 17, 24

*Paramore v. Delta Airlines, Inc.,*
   129 F.3d 1446 (11th Cir. 1997) ............................................................. 24

*Patterson-Priori v. UNUM Life Insurance Company,*
   846 F. Supp. 1102 (EDNY 1994) ............................................................ 6

*Pulvers v. First UNUM Life Ins. Co.,*
   210 F.3d 89 (2d Cir. 2000).................................................................. 17, 25

*Riedl v. Gen. American Life Ins. Co.,*
   248 F.3d 753 (8th Cir. 2001) ................................................................. 24

*Sullivan v. LTV Aerospace & Def. Co.,*
   82 F.3d 1251 (2d Cir. 1996).................................................................. 17

*Tarallo-Brennan v. Smith Barney,*
   1999 WL 294873 (SDNY 1999)............................................................... 6

*Todd v. Aetna Health Plans,*
   62 F. Supp. 2d 909 (E.D.N.Y. 1999), ..................................................... 18

<u>Statutes</u>

29 U.S.C. §§ 1001................................................................................ 1

<u>Rules</u>

29 C.F.R. 2520 ................................................................................................................. 6

Federal Rule of Civil Procedure 56 ............................................................................ 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――― X
VALERIE A. SHORE                          :        CIVIL ACTION
                                          :
         vs.                              :        NO. 1:04-4152-DC
                                          :
RELIANCE STANDARD                         :
LIFE INSURANCE COMPANY, et al.            :
―――――――――――――――――――――――― X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Plaintiff initiated this lawsuit for benefits under Reliance Standard Life Insurance

Company's (Reliance Standard) group long term disability policy number LSC097,614 (the

"policy")[1].  A true and correct copy of the policy is attached hereto as Exhibit "A."  The policy

was issued to plaintiff's former employer, Paine Webber Group, Inc.  See Exhibit "A."  The

policy and plaintiff's claims in this lawsuit are governed by ERISA[2].

For the reasons stated below, judgment should be entered in favor of defendants.  First,

defendants are entitled to judgment in their favor based on plaintiff's failure to timely file this

lawsuit.  Second, under the applicable law, plaintiff cannot meet her burden of proving that the

decision to deny benefits was arbitrary and capricious.  Accordingly, defendants' motion for

summary judgment should be granted.

---

[1] Plaintiff specifically seeks retroactive and prospective benefits, interest and fees and costs.  See
Dkt. No. 1.
[2] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*

I.    __Procedural History__

According to plaintiff's application for benefits[3], she was employed as an Ethics Officer/Director of Continuing Education through January 15, 1999.  (AR 273)[4].  She claims that she was unable to report to work beginning January 19, 1999, due to a work-related injury. (AR 273).  She reportedly injured her back while lifting and dragging a box in  her office.  (AR 273).  According to plaintiff, this injury forced her to stop working because she suffers from "sleepy and unclear thinking while on pain killers/medication, extreme pain sitting, standing, walking, unclear while on pain killers, nerve pain right leg and feet, urinary problem, numb foot and buttock and pelvic area."  (AR 273).

The final portion of plaintiff's application for benefits was her physician's statement, which was completed by William K. Main, M.D. on July 28, 1999.  (AR 505-506).  According to Dr. Main, plaintiff had symptoms of low back pain radiating down her left leg.  (AR 505).  Dr. Main reported that this injury was a result of plaintiff's January 15, 1999 work-related incident. (AR 505).  Surgery was not expected in the near future; however, plaintiff was referred to physical therapy, a psychiatrist and for acupuncture treatment.  (AR 505-506).  Dr. Main reported that within an eight hour work day, plaintiff could stand and sit on an alternating basis, 1-3 hours each.  (AR 506).  He further felt that plaintiff was limited in her ability to perform simple and repetitive tasks and ability to perform complex and varied tasks.  (AR 506). However, he indicated an expectation that plaintiff would reach maximum medical improvement in 3-4 months, pending further review.  (AR 506).

---

[3] The application consists of three sections, an employee statement, an employer statement, and a physician's statement.  (AR 273, 353-354, 358, 272, 274, 505-506).
[4] All AR references are to the administrative record, a copy of which is attached hereto as Exhibit "C."

Based on the information provided, on August 18, 1999, Reliance Standard approved plaintiff's claim for benefits. (AR 214-215). However, the letter advised plaintiff that she would have to provide continued proof of disability. (AR 214). After further review, Reliance Standard determined that as of June 19, 2000, plaintiff was no longer entitled to disability benefits and discontinued payments. (AR 266-268). Plaintiff was advised of her right to appeal and she did so with the assistance of counsel on July 21, 2000. (AR 263-265).

On appeal, plaintiff questioned the decision to discontinue benefits and also questioned the manner in which benefits were calculated. (AR 263-265). On September 18, 2000, Reliance Standard forwarded a copy of the entire administrative record to plaintiff's counsel and granted an additional sixty days for plaintiff to file any documentation which she believed would support her claim for continued benefits. (AR 246-247). Plaintiff did submit additional documentation. (AR 43-187). When submitting this documentation, plaintiff alleged that Reliance Standard miscalculated her monthly benefit amount. (AR 54, 301-302). Many of the documents submitted on appeal were duplicates of medical records that were already in the file and which had already been considered by Reliance Standard. (AR 8).

After additional review of all of the documents within the claim file (both those initially submitted and those received on appeal), Reliance Standard upheld its determination to discontinue benefits. (AR 5-11). Reliance Standard set forth, again, the basis of its determination, including the medical records and policy provisions upon which it relied. (AR 5-11). Reliance Standard also referenced the report of William Scott Hauptman, M.D. who conducted a peer review of plaintiff's medical records. (AR 5-11, 12-20). Reliance Standard's uphold letter also included an explanation of the manner in which it calculated plaintiff's benefits and adjustments made for attorney fees claimed within plaintiff's appeal. (AR 5-11).

More than three years after the denial of her claim, plaintiff filed this lawsuit. Since the complaint was not filed within the required time, defendants are entitled to judgment in their favor. Defendants are also entitled to judgment in their favor on the merits for the reasons stated below.

## II.   Policy Requirements

The policy contains the following language, relevant to initiation of a lawsuit after an adverse benefit determination:

> **LEGAL ACTIONS:**  No legal action may be brought against us to recover on this Policy within sixty (60) days after written proof of loss has been given as required by this Policy.  No action may be brought after three (3) years (Kansas, five (5) years; South Carolina, six (6) years) from the time written proof of loss is received.

Exhibit "A," p. 5.1. (Emphasis in original).

Plaintiff's claim was considered by Reliance Standard in accordance with the following discretionary authority:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the plan.  The claims review fiduciary has the discretionary authority to interpret the plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

Exhibit "A," p. 5.0.  Reliance Standard's review was commenced to determine whether plaintiff was totally disabled, as defined within the policy.

> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:

(1)    during the Elimination Period[5] and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;

(a)    "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness, an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis.  An insured who is Partially Disabled will be considered Totally Disabled except during the Elimination Period;

(b)    "Residual Disability" means being Partially Disabled during the Elimination period.  Residual Disability will be considered Total Disability; and

(2)    after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation.  Any occupation is one that the Insured's education, training, or experience will reasonably allow.  We consider the insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

Exhibit "A," p. 2.1.

## III.    Plaintiff's lawsuit is time barred

Defendants answer to the complaint included as an Affirmative Defense that plaintiff's claim was barred by the applicable contractual limitation period.  See Dkt. No. 8.  A final determination was issued on plaintiff's claim on February 16, 2001.  (AR 5-11).  Plaintiff did not initiate this lawsuit until June 2, 2004, *more than three years later*.  See Dkt. No. 1.  Therefore, the lawsuit was filed four months after the three year contractual limitation period expired and is time-barred.  See Exh. "A," p. 5.1.  *See also Manginaro v. The Welfare Fund of Local 771,* 21 F. Supp.2d 284, 293 (SDNY 1998); *Lugo v. AIG Life Ins. Co.,* 852 F. Supp. 187, 195 (SDNY

---

[5] The Elimination Period is a period of 180 consecutive days, beginning on the date of disability, during which plaintiff must demonstrate total disability but during which benefits are not payable.  Exhibit "A," 2.0.

1994); *Patterson-Priori v. UNUM Life Insurance Company,* 846 F. Supp. 1102 (EDNY 1994);

*Tarallo-Brennan v. Smith Barney,* 1999 WL 294873 (SDNY 1999).

In *Patterson-Priori*, the Court examined the application of the exact language used in this policy and held that this language required the filing of the lawsuit within three years after there was clear repudiation of the claim.  846 F. Supp. at 1102.  In *Patterson-Priori*, the statute period began to run even where additional documentation was informally reviewed by the insurer after the repudiation.  *See Id.*  Pursuant to this authority, plaintiff's lawsuit was required to have been filed by February, 2004.  It was not.  This error should therefore result in immediate dismissal of plaintiff's lawsuit with prejudice, without consideration of the claim on the merits.

Counsel for plaintiff will certainly argue that the contractual limitation period does not apply since it is not contained in a summary plan description.  Mr. Preminger succeeded in that argument in *Manginaro*.  Defendant does not believe that the decision in *Manginaro* correctly states the law applicable to ERISA, therefore, it should not be followed.  Moreover, there are significant factual differences between the two cases.

The district court in *Manginaro* believed that the contractual limitation period needed to be included in the summary plan description based on the ERISA regulations.  The regulation requires welfare benefit plan summary plan descriptions to include "circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, off set, reduction, or recovery (E.D., by exercise of subrogation or reimbursement rights) of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide. . ."  29 C.F.R. 2520.102-3(l).  This language does not require the inclusion of the plan's contractual limitation period.

A policy's contractual limitation period has nothing to do with whether a claimant is eligible for benefits. Instead, the contractual limitation period only concerns whether an employee has standing to pursue a lawsuit in court. This distinction was not recognized by the district court in *Manginaro.*

In support of its conclusion that the contractual limitation period should have been identified in the summary plan description, the district court in *Manginaro* cited to *Dodson v. Woodmen of the World Life Ins. Soc'y,* 109 F.3d 436 (8th Cir. 1997). That case, however, did not involve the issue of whether the lawsuit was timely filed. The issue was whether the *claim* was filed in accordance with the terms of the policy. Under the policy in *Dodson,* the claimant had one year after the onset of disability to submit his claim. He did not file his claim, however, until more than two years later. Since the policy provision relied on by the defendant directly involved a provision that disqualified the claimant from pursuing his claim, *not litigation*, the court held that the summary plan description was faulty for not including it. That holding has nothing to do with whether a summary plan description must include the limitation period in which a claimant must file suit.

The holding in *Manginaro* does not apply to this case for an additional reason. As recognized in *Manginaro,* a claimant cannot rely on the fact that the summary plan description does not include the shorter limitation period if the plaintiff "knew, or had reason to know, this period had been curtailed by the Plan." *Manginaro,* 21 F. Supp.2d at 296. Here, the plaintiff had every reason to know that the shorter limitation period applied. Reliance Standard delivered to the Plan certificate booklets which identified the terms in the policy, including the contractual limitation period. The certificate booklets were distributed to PaineWebber employees, including Ms. Shore. As a result, plaintiff cannot show that she was prejudiced by the fact that

the summary plan description does not include the contractual limitation period and her lawsuit

is barred by it.  However, in the event that this Court considers the substance of plaintiff's

complaint, defendants provide the following arguments in support of the decision, without

waiving their defense that this matter should be dismissed due to the late filing.

## IV.     **Medical Records**

On January 19, 1999, the first day she was unable to work, plaintiff consulted with

Sheldon Lichtblau, M.D., an orthopedic surgeon.  (AR 491).  Dr. Lichtblau noted plaintiff's

complaints of pain and recommended bed rest, muscle relaxant medication, pain killers and anti-

inflammatory medication.  (AR 491).  She was scheduled for follow up in one week.  (AR 491).

During that time, Dr. Lichtblau recommended that plaintiff not return to work.  (AR 492).  He

recommended that she remain out of work for an additional week on January 26, 1999.  (AR 466).

Plaintiff underwent an MRI of her lumbar spine on February 9, 1999, which revealed degenerative

disease.  (AR 472, 407).  She reported to Charles A. Gatto, M.D. on February 18, 1999, who noted

the MRI findings and discussed a plan to have plaintiff participate in physical therapy, medication,

trial acupuncture and an EMG nerve conduction study.  (AR 407-408).  Dr. Gatto also indicated

an intention to have plaintiff undergo a joint injection treatment.  (AR 408).  Plaintiff returned to

Dr. Gatto on March 4, 1999 and at that time, he noted that plaintiff had tried one episode of

acupuncture which relieved her pain for 1-2 days.  (AR 406).  However, she had not received

physical therapy, the EMG nerve conduction study or the joint injection.  (AR 406).

As part of its review, Reliance Standard received and considered a short term disability

application, in which Dr. Gatto estimated that plaintiff would be able to return to work in

approximately one month but that re-evaluation would occur prior to that time.  (AR 484).  In the

meantime, he recommended restrictions and limitations from lifting, squatting, bending or climbing and advised that plaintiff required frequent breaks for changes of position. (AR 484).

On April 8, 1999, plaintiff underwent the EMG study, which revealed only "mild neuropathic dysfunction in the muscles." (AR 404). Plaintiff returned to Dr. Gatto on April 22, 1999, at which point he reported that she had been in physical therapy for three weeks but that it was not helpful. (AR 402-403). Plaintiff had still not received the joint injection which was recommended. (AR 402). Dr. Gatto reviewed the recent MRI and EMG studies and advised that plaintiff should see a neurologist. (AR 402). Dr. Gatto continued to report a belief that plaintiff should undergo the injection that had been suggested on February 18, 1999. (AR 402). However, Dr. Gatto reported that "*at this point in time I feel that she should be able to return to work at some limited capacity.*" (AR 403). Dr. Gatto explained the limitations, noting that the work would have to be "light duty capacity, no lifting or bending. She would need frequent positional changes with the ability to sit, stand and lie down during the day at certain periods." (AR 403). Dr. Gatto found plaintiff's upper extremities and her attention and cognitive abilities to be grossly normal. (AR 403).

On April 29, 1999, plaintiff reported to William Kennedy Main, M.D. for evaluation of her lower back pain. (AR 439-440). Dr. Main reported the results of his examination as:

> Examination reveals a generally healthy appearing young woman. Her posture and balance and gait appear to be grossly normal. She does have considerable stiffness of the trunk and lumbar spine and pain with range of motion of the lumbar spine. Neurologically, she appears to have no deficits of motor strength sensation or deep tendon reflexes. Straight leg raising does seem to increase her lower back pain.

(AR 439). Dr. Main recommended that plaintiff undergo a prolonged course of physical therapy and other conservative measures prior to considering invasive treatment. (AR 440).

As of this point, Reliance Standard had begun to question the duration of plaintiff's restrictions and limitations. (AR 352, 503). On August 5, 1999, the company referred the file for a medical review to determine plaintiff's current medical status and the level of her restrictions and limitations and the expected duration of her disability. (AR 482). In the meantime, on August 17, 1999, Dr. Main provided an additional narrative report. (AR 360). Although he did not recommend surgery, Dr. Main strongly recommended that plaintiff undergo additional testing to determine the cause of her complaints of urinary problems. (AR 360-361). On August 18, 1999, Reliance Standard approved plaintiff's claim for long term disability benefits, paying benefits retroactively to the end of her elimination period. (AR 214-215).

After the claim was approved, Reliance Standard advised plaintiff that a specialist would contact her to discuss her present status and future needs. (AR 337). This contact was made in October, 1999, at which time plaintiff stated that her doctor had not yet released her to work and that she could not return to work until her physical problems subsided. (AR 328). Plaintiff further advised that she would only consider a return to her previous occupation or a closely related one, along with a comparable salary. (AR 328). The evaluator determined that plaintiff's motivation for exploring a return to work was not promising at that time. (AR 328).

Reliance Standard also referred this file for an independent medical examination (IME) to determine plaintiff's level of impairment, exact diagnosis, physical capacities, treatment recommendations and any recommendations to facilitate a return to work for an eight hour work day. (AR 476). The examination was also requested to determine what, if anything, precluded plaintiff from returning to her full time sedentary work. (AR 476). The examination was scheduled for October 13, 1999 and was conducted by Edward M. Adler, M.D. (AR 383-389). Dr. Adler reviewed plaintiff's medical records and also performed a history and physical

examination.  (AR 384).  He confirmed the diagnosis of degenerative disc disease and mechanical low back pain.  (AR 385).  Dr. Adler reported that he was concerned about plaintiff's history of bladder dysfunction and believed that she deserved a detailed bladder workup consisting or urodynamic studies and bladder cystomatrogram.  (AR 386).  According to Dr. Adler, "if the bladder studies reveal evidence of nerve compression in the lumbar spine, she will need a repeat MRI of the lumbar spine.  If the bladder studies are normal, she does not require further radiographic evaluation of the lumbar spine."  (AR 386).

Dr. Adler classified plaintiff as moderately partially disabled and stated that she would benefit from additional treatment.  (AR 386).  Along with his report, Dr. Adler completed a physical capacities assessment, noting that plaintiff can occasionally bend, squat and use foot controls, frequently reach above and below her shoulders and drive but never climb, kneel or crawl.  (AR 387).  He also noted that plaintiff was capable of lifting or carrying at a ten pound level.  (AR 387).  Dr. Adler concluded that plaintiff is capable of working at a sedentary level desk job.  (AR 388).  He further reported that if her bladder urodynamic studies do not suggest spinal pathology, *she can return to wor*k.  (AR 388).

Plaintiff underwent the recommended urodynamic study on November 2, 1999.  (AR 365).  The report showed few abnormalities noting, mild sensory urgency, elevated urethal sphincter pressures but otherwise a normal study.  (AR 365).  The report of the study, which was issued by Dr. Vapnek, noted that "the elevation of urethal sphincter pressures is commonly seen in those with back problems as well as those who simply have tight pelvic floors.  Devoiding itself was normal with no evidence of dyssynergia.  (AR 365).  It was noted that at the time of the study, plaintiff was asymptomatic and a repeat study was recommended when her symptoms returned.  (AR 365).

Following the IME, Reliance Standard forwarded a copy of the report to Dr. Gatto, asking if he concurred with the findings. (AR 192). However, *Dr. Gatto advised that he had not seen plaintiff since April 22, 1999* and advised that he could not comment without reevaluation. (AR 381). Likewise, on April 10, 2000, *Dr. Lichtblau advised that he was no longer treating plaintiff.* (AR 370). On March 31, 2000, Reliance Standard received a note from Frederick Swerdlow, M.D., another of plaintiff's treating physicians. (AR 371). He reported an opinion that plaintiff was disabled as a consequence of her injury and continued to require ongoing care and further MRI testing of her spine. (AR 371). However, on June 19, 2000, Reliance Standard determined that plaintiff was no longer qualified for benefits under its policy. (AR 266-268).

In the denial letter, Reliance Standard referred to Dr. Vapnek's August 5, 1999 note which indicated that plaintiff's urine study was negative; thus indicating that there was no link between her back disorder and her urinary urgency. (AR 267). Reliance Standard also noted the results of the IME, which noted only moderate, *partial* disability and found plaintiff capable of sedentary level desk work. (AR 267). Reliance Standard further noted the opinion of Dr. Adler that if the urodynamic study did not suggest a spinal pathology (which it did not), then plaintiff could return to work. (AR 267, 365). Reliance Standard advised plaintiff of her right to appeal the determination and she did so on July 21, 2000. (AR 263-265).

Plaintiff, in her appeal, questioned the determination of Reliance Standard to discontinue benefits, questioned the manner in which benefits were calculated while paid, and asserted claims against Reliance Standard based on her belief that Reliance Standard was the plan administrator. (AR 263-265). In later letters, dated September 20, 2000 and November 20, 2000, plaintiff claimed that she had been underpaid prior to the discontinuance of benefits and she also asserted a claim for attorney fees in connection with pursuit of her worker's

compensation and social security claims.  (AR 301-302, 54).  On November 20, 2000, plaintiff

provided Reliance Standard with a letter containing a detailed basis of her appeal.  On appeal,

plaintiff further argued that Reliance Standard erred in not considering her commute to work as

part of her material duties.  (AR 45).  Plaintiff also argued that her occupation was much higher

than a sedentary level strength occupation.  As Exhibit "C" to her appeal letter, plaintiff provided

a document titled Valerie Shore's job description as Paine Webber's Marketing Specialist,

Director of Continuing Education and Ethics Officer.  (AR 91).  It is unclear who prepared this

document; however, it does not appear that it was prepared by plaintiff's employer.  (AR 91).

Indeed, the second task on the list was "daily transportation to and from work, subway, taxi and

walking."  (AR 91).

During the appeal, plaintiff further argued that Reliance Standard's determination was

wrong because it was not consistent with the reports of her treating physicians.  (AR 46).

Plaintiff reported her diagnosis and alleged that she experienced painful symptoms that were

worsened by standing and/or sitting.  (AR 47).  Plaintiff further relied on the fact that the Social

Security Administration had awarded benefits as support for her continued claim.  (AR 50).  She

further argued that Reliance Standard inappropriately relied only on the IME report of Dr. Adler,

ignoring the reports of plaintiff's treating physicians.  (AR 52).  Finally, assuming that plaintiff's

occupation was sedentary in function, plaintiff reported that her condition precluded her from

performing any occupation including sedentary level desk work.  (AR 51, 53).  The appeal

notice from plaintiff included seven exhibits, containing numerous medical records, many of

which had already been considered by Reliance Standard.  (AR 8).  All medical records were

again considered.  (AR 5-11).

As part of its review during the appeal, Reliance Standard referred the file to William

Scott Hauptman, M.D. who evaluated the entire file.  (AR 12-19).  Dr. Hauptman's report was

issued on January 25, 2001.  (AR 12-19).  Dr. Hauptman completed a thorough review of

plaintiff's medical records, including those submitted on appeal and provided an assessment.

(AR 12-19).  He concluded that plaintiff was not totally disabled from a sedentary level

occupation.  (AR 18-20).  Dr. Hauptman noted plaintiff's persistent lower back pain but

concluded that she can function at a sedentary level with breaks, as necessary to stand up or

move around.  (AR 18).  Dr. Hauptman based his opinion on the minimal objective findings

(MRI and EMG).  (AR 19).  He noted that the most recent MRI only found a tiny disc herniation

with mild degenerative changes.  (AR 19).  The EMG studies were "similarly mild."  (AR 19).

Dr. Hauptman found that these findings were not consistent with incapacitating pain.  (AR 19).

He further noted "numerous physical examinations from [plaintiff's] doctors revealed neurologic

examinations with normal reflexes and normal motor examination of the lower extremities.  Dr.

Dutta documented that the patient had good range of motion of her back without exacerbation of

the pain."  (AR 19).  "Similarly, [Dr. Hauptman reported that] Dr. Maine documented on

neurologic exam no deficits of motor strength, sensation or deep tendon reflexes.  The physical

therapy notes indicated that the patient was walking and going to the gym."  (AR 19).  As further

support for his conclusion, Dr. Hauptman noted that Dr. Swerdlow "on February 18, 2000,

approximately thirteen months after the initial injury [reported that] the only medication that she

was taking was Advil on an as-needed basis."  (AR 19).  Dr. Hauptman concluded, "with a

reasonable degree of medical certainty that the claimant can function at a sedentary level with

the possibility to take breaks as needed to move about.  The symptoms of numbness in the low

back and the perineum experienced while sitting does not preclude the patient from performing a sedentary occupation if she is allowed to have breaks and walk around as necessary." (AR 19).

On January 22, 2001, plaintiff provided Reliance Standard with notice of a favorable decision from the New York State Workman's Compensation Board. (AR 23-25). However, based on its own review of the record and the requirements of the Reliance Standard policy, Reliance Standard upheld its determination to discontinue benefits by letter dated February 16, 2001. (AR 5-11). Reliance Standard advised plaintiff that her commute to and from work is not considered a material duty of her occupation. (AR 6). Reliance Standard also advised plaintiff that the findings of the Social Security Administration and Workman's Compensation Board were considered but are not binding on Reliance Standard's review of its own policy provisions. (AR 9). Reliance Standard referenced the medical records which caused it to discontinue benefits. (AR 5-11). Finally, Reliance Standard addressed plaintiff's claim that her benefits were not calculated correctly. (AR 10-11). Reliance Standard set forth the manner in which benefits were calculated and the applicable policy provisions. (AR 10-11). Reliance Standard did adjust its figures to account for attorney fees incurred as plaintiff pursued additional benefits from other sources. (AR 11). However, the calculations remained the same in all other respects. (AR 11).

Plaintiff's file was closed; however, she was invited to submit additional information *limited to the calculation of benefits*, if she had documentation to demonstrate that the amount of covered monthly earnings was miscalculated by Reliance Standard. She did not and that issue has not been raised in this lawsuit. However, plaintiff attempted to appeal the disability determination and Reliance Standard reminded her that she had already exhausted her administrative remedies and that the file was closed. (AR 4). The additional documents were

returned to plaintiff and are not part of this file.  (AR 4).  This lawsuit was then filed by new counsel.

**V.    Legal Argument**

A.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be entered when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).  Rule 56(c) mandates entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.  Factual disputes that are irrelevant or unnecessary are not material.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)

B.    Standard of Review

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57 (1989), the Supreme Court considered the issue of the appropriate standard for judicial review of benefit determinations by fiduciaries or plan administrators under ERISA.  The Court ruled, at least as to the disputed issue in that case, that "[c]onsistent with established principles of trust law, . . . a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.*

The policy in this case grants discretion to Reliance Standard, as it provides:

> Reliance Standard Life Insurance Company shall serve as the
> claims review fiduciary with respect to the insurance policy and

the Plan. The claims review fiduciary has the discretionary
authority to interpret the Plan and the insurance policy and to
determine eligibility for benefits.  Decisions by the claims review
fiduciary shall be complete, final and binding on all parties.

Exhibit "A," p. 5.0.

Since this plan grants discretionary authority to Reliance Standard, the decision to

discontinue benefits is subject to the deferential arbitrary and capricious standard.  *See Kinstler v.*

*First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 249 (2d Cir. 1999).  To avoid this standard,

plaintiff must come forward with evidence demonstrating that defendant had a conflict of interest

that affected its decision.  *See Sullivan v. LTV Aerospace & Def. Co.,* 82 F.3d 1251, 1254-55, 59

(2d Cir. 1996).  The fact that the decision maker is also responsible for paying any benefits owed

does not alter the standard of review.  Instead, it is a mere factor to be weighed in deciding

whether there was an abuse of discretion.  *See Pulvers v. First UNUM Life Ins. Co.,* 210 F.3d 89,

92 (2d Cir. 2000).  In this case, plaintiff has come forward with no evidence that Reliance

Standard was acting under a conflict of interest that affected the reasonableness of its decision.

It is her burden to do so.  *See Id. at 92*.  Therefore, the deferential arbitrary and capricious

standard of review applies.  *See Id.*

Under the arbitrary and capricious standard, the plan's decision must be affirmed unless

"it was without reason, unsupported by substantial evidence or erroneous as a matter of law."

*Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir. 1995).  As stated in *Pagan,* the court's

scope of review is narrow and the court may not substitute its own judgment for that of the plan.

Under the deferential standard of review applicable to this claim, the decision must be affirmed if

it is supported by "substantial evidence."  Substantial evidence is "such that a reasonable mind

might accept as adequate to support the conclusion reached by the [decision maker]."  *See Todd*

*v. Aetna Health Plans,* 62 F. Supp. 2d 909, 913 (E.D.N.Y. 1999), *quoting Miller v. United*

*Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995).  Here, the evidence to be considered is limited

to the administrative record.  *See Locher v. Unum Life Ins. Co.*, 389 F.3d 288 (2d Cir. 2004).

The record provides substantial evidence to support defendant's decision that plaintiff was no

longer totally disabled when benefits were discontinued.

The burden of proving entitlement to coverage for an insurance benefit rests with

the claimant.  *See George v. First UNUM Life Ins. Co.*, 1996 U.S. Dist. LEXIS 18062 (S.D.

N.Y. 1996) (*citing Abnathya v. Hoffmann-LaRoche, Inc.*, 2 F.3d 40, 47-48 (3d Cir. 1993) for

the proposition that "an insured could not receive benefits of an insurance policy if she

could not substantiate her claim of total disability").  Based on the record, plaintiff has

failed to meet her burden beyond June 19, 2000.  (AR 266-268).  For the reasons set forth

below, Reliance Standard's decision to discontinue benefits should be upheld.

C.    Determination of Plaintiff's Disability Claim

1.    Plaintiff must demonstrate total disability from her occupation

As noted above, the portion of the application which is required to be completed by

plaintiff's employer actually appears to have been completed by plaintiff, herself.  (AR

272, 274).  These two pages constitute part of the employer statement.  (AR 272, 274).

The information requested on the first page was not provided.  (AR 272).  The information

on the second page was provided, in that plaintiff responded to a question regarding

available job modifications by stating that she did not know whether the job could be

modified to accommodate her condition because ". . . [j]ust getting to work would require

my being on strong pain medication that leaves me very foggy and unable to do normal

tasks . . ."  (AR 274).

Plaintiff provided a quasi job description, which she again appears to have prepared herself. (AR 91). As opposed to providing the material duties of her occupation, the "job description" listed miscellaneous tasks that plaintiff performed, without identifying whether or not they were in fact material to the occupation. (AR 91).

Reliance Standard used the "job description" provided by plaintiff as well as the Department of Labor's Dictionary of Occupational Titles ("DOT") to identify the material duties of her occupation. (AR341-346). The DOT confirmed that the occupation of Director of Educational Programs was classified as a sedentary level strength occupation which involved the following tasks:

> 1. Cooperates with businesses, civic, and other organizations to develop curriculums to meet needs and interests of students and community.
>
> 2. Interviews and selects staff members and provides in-service training for teachers.
>
> 3. Prepares budget and determines allocation of funds for staff, supplies and equipment, and facilities.
>
> 4. Analyzes data from questionnaires, interviews, and group discussions to evaluate curriculums, teaching methods, and community participation in educational and other programs.

(AR 341). The occupation may also include the following tasks:

> 1. May direct preparation of publicity to promote activities, such as personnel recruitment, educational programs or other services.
>
> 2. May specialize in elementary, secondary, adult, or junior college education.

(AR 341).

Notably, the commute to and from work is not listed as a material duty of the occupation. (AR 341). Nor can it reasonably be considered a material duty of such an

occupation. for the same reason that it is not a material duty of a teacher or a lawyer. Nonetheless, according to plaintiff, she is unable to work, in part because she is unable to sit in a car and do the hour commute to work.  (AR 408).  In her appeal letter, plaintiff claimed that the commute was contributing to her disability because "[o]n a daily basis, just to get to work, and while carrying voluminous documents and a lap top computer, Ms. Shore has to navigate the New York City subway system.  This, alone involves extended periods of walking and stair climbing."  (AR 45).

Regardless of whether by car or train, plaintiff's commute to and from work cannot be considered a material duty of her occupation.  Reliance Standard is not aware of any authority from this district of this issue; however, persuasive authority is available from the First Circuit Court of Appeals.  *See e.g.  McMahon v. Digital Equipment Corp.,* 162 F.3d 28 (1st Cir. 1998).  In that case the court held that the commute is not a material duty of a plaintiff's occupation.  This makes sense.  One can imagine a claimant moving further away from work and then claiming disability.  The work did not change, nor the claimant's ability to do the work.  The only thing that changed was the commute.

In *Kinstler*, the Second Circuit stated that a claimant's "regular occupation" cannot be "defined so narrowly as to include only the characteristics of her job at Project Return, it must be defined as a position of the 'same general character' as her job, *i.e.*, a director of nursing at a small health care agency, as distinguished from a large general purpose hospital."  *See Kinstler v. First Reliance Standard*, 181 F.3d 243, 253 (2d Cir. 1999).  Reliance Standard's vocational review complies with this requirement.

The "job description" that plaintiff prepared did not include any tasks which would have raised the strength level of her occupation beyond sedentary.  (AR 341).  Indeed, one of the tasks

identified was "[t]elephone work seated approximately 6 to 10 hours a day." (AR 91). Plaintiff also indicated that she "[d]aily often spent 100% of time standing or seated." (AR 91). However, as discussed more fully below, it was this ability to alternate between sitting and standing that led Reliance Standard to the conclusion that plaintiff is able to work. (AR 19, 403).

Plaintiff also identified, within her "job description" the task: "daily carried large amounts of documents, lap top, and materials to meetings and seminars and to and from work." (AR 91). Likewise, on appeal, plaintiff identified the need to unpack heavy materials and carry them to a printer for approval and editing as a task that removes her occupation from the sedentary category. (AR 45). However, beyond the fact that there is no proof that these are material requirements of plaintiff's occupation, there is likewise no explanation as to why plaintiff can not utilize a cart or other pull-type device in order to avoid carrying heavy items. Reasonably, in this day and age, such a resource would be expected to be utilized.

Further, relevant to the classification of her occupation as a sedentary level occupation, plaintiff has indicated that she travels by subway, taxi, airplane, train, rental car and ferry. (AR 91). On appeal, she noted that the need to travel by plane requires her to sit for extended periods of time (an action which is clearly sedentary) and that air travel requires her to carry heavy baggage. (AR 46). However, such travel in and of itself does not demonstrate exertion beyond a sedentary level. To the contrary, these vehicles provide plaintiff with an opportunity to remain stationary on the vehicle as it transports her to her destination, thus requiring no physical exertion on her part beyond boarding the vehicle. Further, it would reasonably be expected that plaintiff would utilize a porter or pull-type device to assist in the move of her luggage.

Finally, plaintiff advised that her job required her to take monthly tours of the New York Stock Exchange, preceded by breakfast and followed by luncheons. (AR 91). According to

plaintiff, the tours continued for a minimum of four hours.  (AR 91).  However, the preceding

breakfast and subsequent lunch certainly provide plaintiff with an opportunity to sit.  Further, it

is reasonable for Reliance Standard to expect that during the course of a four hour tour,

participants would require a break and that during such time, plaintiff would be able to sit for a

moment to gather herself.   More important, this is not the type of "material duty" contemplated

by *Kinstler*.

Reliance Standard properly classified plaintiff's occupation as sedentary and once

classified, Reliance Standard properly determined that plaintiff was not totally disabled from her

occupation.  Plaintiff relies on a diagnosis of degenerative disc disease, herniated disc and

bilateral radiculopathy as proof of continued disability.  (AR 47).  However, the policy does not

insure against a diagnosis but rather insures against an injury or sickness which precludes

performance of the material duties of plaintiff's occupation.  See Exhibit "A," p. 2.1.  Likewise,

this Court should not consider plaintiff's "diagnosis" as proof of disability.  *See Jordan v.

Northrop Grumman Corp.*, 370 F.3d 869 (9th Cir 2004) (stating that a mere diagnosis is not proof

of disability).

2.    <u>Plaintiff did not demonstrate continued disability</u>

Despite her diagnosis, the record in this case (including the reports of plaintiff's treating

physicians) reveal that plaintiff is capable of performing a sedentary level occupation.  Reliance

Standard considered both the objective findings and subjective reports of pain, included within

the record.  Diagnostic testing revealed only mild findings which were not supportive of

continued disability.  (AR 404, 439-440).  Likewise, diagnostic testing revealed that plaintiff's

later reported urinary problems were not related to her back condition.  (AR 386, 365).  Reliance

Standard recognized the report of Dr. Vapnek, which found such a relation; however, this

conclusion was reasonably rejected based on the medical testing which showed otherwise. (AR 386, 365).

In the beginning of her claim, Dr. Gatto recommended only restrictions and limitations from lifting, squatting, bending or climbing and advised that plaintiff be allowed frequent breaks to change position.  (AR 484).  He determined that plaintiff was able to work at a light level capacity, with limitation.  (AR 403).  However, those restrictions were limited to no lifting or bending and the ability to change position.  (AR 403).  Before discontinuing benefits, Reliance Standard obtained an IME, which further demonstrated that plaintiff was capable of working at a sedentary level.  (AR 383-389).  A peer review confirmed the findings.  (AR 12-19).

On appeal, plaintiff alleged that Reliance Standard should have reversed its determination because her physicians "concur in her diagnosis and functional limitations." (AR 45).  As noted within Reliance Standard's letters discontinuing benefits, several of the records of plaintiff's treating physicians support the determination that plaintiff was no longer disabled.  (AR 266-268, 5-11).  However, even to the extent that some of plaintiff's physicians concluded that plaintiff was disabled, Reliance Standard is not bound by the determinations of her treating physicians. *Black & Decker Disb. Plan v. Nord*, 123 S.Ct. 1965 (2003).  Reliance Standard conducted its own review, which included review of all documents provided to it.  (AR 266-268, 5-11).  However, its determination may not be reversed by this Court merely because some of plaintiffs treating physicians determined that she was disabled. *See Id.*

Even if plaintiff's occupation were not sedentary, she had been cleared to perform more strenuous work.  (AR 403).  According to Dr. Gatto, with the noted restrictions and limitations, plaintiff was capable of performing light level work.  (AR 403).  Therefore, plaintiff could continue to perform the travel requirements of her job, with the assistance of travel aids, such as

a porter.  Likewise, release to light duty work demonstrated that plaintiff could also perform the alternating sitting, standing and walking tasks required of her job, with breaks.

Based on her appeal, it is expected that plaintiff will criticize Reliance Standard's review by arguing that it relied only on the IME report of Dr. Adler.  (AR 52-53).  However, the initial discontinuance letter and the letter upholding that determination demonstrate that Reliance Standard considered plaintiff's entire record.  (AR 266-268, 5-11).  Without limitation, Reliance Standard's letters referenced portions of the record, including reports of her treating physicians, which caused it to conclude that plaintiff was not longer disabled.  (AR 266-268, 5-11). Accordingly, any such argument should be rejected by this Court.

On appeal, plaintiff also attempted to support her claim by noting that she had been awarded Social Security and Workers Compensation benefits.  (AR 50-51).  However, these determinations are not binding upon Reliance Standard.  *Cook v. Liberty Life Assurance Co.,* 320 F.3d 11, 16 n.5 (1st Cir. 2003);  *Leahy v. Raytheon Co.*, 315 F.3d 11 (1st Cir. 2002); *Riedl v. Gen. American Life Ins. Co.,* 248 F.3d 753, 759 n.4 (8th Cir. 2001); *Chandler v. Raytheon Employees' Disability Trust,* 53 F.Supp.2d 84 (D. Mass. 1999), *aff'd* 2000 W.L. 800 788 (1st Cir. 2000); *Elliott v. Sara Lee Corporation,* 190 F.3d 601, 607 (4th Cir. 1999); *Paramore v. Delta Airlines, Inc.,* 129 F.3d 1446, 1452 n.6 (11th Cir. 1997); *Pagan v. NYNEX Pension Plan,* 846 F.Supp. 19, 20 (S.D. N.Y. 1994), *aff'd,* 52 F.3d 438 (2d Cir. 1995); *Anderson v. Operative Plasterers' & Cement Mason's Int'l. Assoc.,* 991 F.2d 356 (7th Cir. 1993); *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1286 (9th Cir. 1990).

Reliance Standard is required to conduct its own review based on the authority granted to it.  Exhibit "A," p. 5.0.  In conducting its review, Reliance Standard not only considered plaintiff's medical records but also considered review from other sources, such and the IME and

the report of Dr. Hauptman, which neither the Social Security Administration nor the Worker's

Compensation Board had the liberty of reviewing.  These documents further demonstrated that

plaintiff was no longer disabled as of the date that Reliance Standard discontinued benefits.

In a case such as this where the benefit plan's fiduciary has discretionary authority to

determine eligibility, the court "narrowly reviews" the denial of benefits, *Burke v. Kodak Ret.*

*Income Plan,* 336 F.3d 103, 110 (2d Cir. 2003).  Under this arbitrary and capricious standard, the

court will overturn a denial of benefits only if the decision is "without reason, unsupported by

substantial evidence or erroneous as a matter of law." *Pulvers v. First UNUM Life Ins. Co.,*  210

F.3d 89, 92 (2d Cir. 2000).  Here, the decision is fully supported by the evidence in the record

and the applicable law.  Therefore, it should be affirmed

## VI.    Conclusion

Based on the arguments set forth above, this Court should dismiss plaintiff's lawsuit as

untimely and barred by the contractual statute of limitations.  However, in the alternative, based

on the record and the arguments set forth above, plaintiff's claim should be dismissed because

she failed to demonstrate continued disability beyond the date benefits were discontinued.

RAWLE & HENDERSON, LLP


By:_____/s/_____
        Joshua Bachrach, Esquire
        Heather J. Holloway, Esquire
        Attorneys for Defendants
        The Widener Building
        One South Penn Square
        Philadelphia, PA 19103


Date: January 11, 2005