David S. Preminger (DP 1057)
Rosen Preminger & Bloom LLP
708 Third Avenue, Suite 1600
New York, NY 10017
(212) 682-1900

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
VALERIE A. SHORE,

        Plaintiff,

   v.                                             No. 04 CV 4152 (KMK)

PAINEWEBBER LONG TERM DISABILITY      ECF Document
PLAN, *et al.*,

        Defendants.
-----------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ...................................................................1

II.  FACTS AND PROCEDURAL HISTORY ................................................2

III.  PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE PLAN'S
THREE YEAR LIMITATIONS PERIOD ....................................................7

IV.  PLAINTIFF IS ENTITLED TO BENEFITS ..............................................10

    A.  Job Description ...............................................................................11

    B.  Defendants' Propensity for Reviewing Only the
Evidence They Like .........................................................................12

V.  CONCLUSION ........................................................................................13

## I.   PRELIMINARY STATEMENT

On January 11, 2005, Plaintiff and Defendants filed their respective Motions for Summary Judgment. Defendants, in support of their Motion, filed a statement pursuant to Local Rule 56.1 ("Def. Rule 56.1 Statement") and a Memorandum of Law ("Def. Memo"). Plaintiff's opposition to Defendants' Motion consists of her Counterstatement pursuant to Local Rule 56.1 ("Pltf. Counterstatement") and this memorandum of law.

## II.   FACTS AND PROCEDURAL HISTORY

Defendants' recitation of the "Procedural History" (Def. Memo at 2-4) and "Medical Records" (id. at 9-16) is replete with inaccuracies and omissions. For example, Defendants assert that on the physician's portion of Plaintiff's application for long term disability ("LTD") benefits,[1] her doctor, Dr. Main, stated that "plaintiff had symptoms of low back pain radiating down her left leg" citing AR 505.[2] Def. Memo at 2. While that assertion is correct as far as it goes, that statement was in the section of the application form titled "SYMPTOMS (subjective)." In the section titled "PRIMARY DIAGNOSIS,"[3] Dr. Main stated that Plaintiff suffered from a "lumbar herniated disc L4-L5" [id.] and in the section titled "OBJECTIVE FINDINGS," Dr. Main stated "patient has primarily mechanical back pain related to disc injury dating back to her work related incident on January 15, 1999." [Id.] See also Def. Rule 56.1 Statement ¶ 12; Pltf. Counterstatement ¶ 12.

Defendants also assert that Dr. Main stated that "[s]urgery was not expected in the near future; however, plaintiff was referred to physical therapy, a psychiatrist and for

---

[1] On a form drafted and provided by defendant Reliance Standard Life Insurance Company ("Reliance"), see e.g. [AR 273]; AR 505].
[2] All such references are to the administrative record, a full copy of which has been filed by both Plaintiff and Defendants in support of their respective Motions for Summary Judgment.
[3] The application form has no space for other diagnoses.

acupuncture treatment." Def. Memo at 2 citing AR 505. This statement is both incomplete and inaccurate. Dr. Main did state that he was not referring plaintiff for surgery in the near future because the only two choices in the section titled "DO YOU EXPECT SURGERY IN THE NEAR FUTURE" are: "YES" AND "NO." There is, of course, no indication of what time period is encompassed by "IN THE NEAR FUTURE." Thus, Dr. Main correctly added that he was referring Plaintiff for physical therapy, obviously indicating that surgery might be needed if physical therapy proved ineffective. [AR 505] The form further notes that Dr. Main had referred Plaintiff for acupuncture and to a physiatrist.[4] [AR 0505] However, contrary to Defendants' assertion, Plaintiff was never referred to a psychiatrist.[5]

Defendants also assert that Dr. Main "reported that within an eight hour work day, plaintiff could stand and sit on an alternating basis, 1-3 hours each," citing AR 506. However, Defendants fail to inform the Court that the Reliance form filled out by Dr. Main also indicates that the eight hour work day referred to therein includes two breaks and lunch. Also, the two most limiting choices are "None" and "1-3 Hours." Thus, if Dr, Main believed Plaintiff could sit and stand, but not for prolonged periods, his only choice was 1-3 hours. Dr. Main was certainly not saying that Plaintiff could sit and stand alternately for even one hour apiece during an 8 hour day; any such statement would contradict his other conclusions. Defendants also fail to note that Dr. Main, in the

---

[4] "A physiatrist (fizz ee at' trist) is a physician specializing in physical medicine and rehabilitation. Physiatrists treat a wide range of problems from sore shoulders to spinal cord injuries. They see patients in all age groups and treat problems that touch upon all the major systems in the body. These specialists focus on restoring function to people." American Academy of Physical Medicine and Rehabilitation: www.aapmr.org/condtreat/what.htm.

[5] Defendants undoubtedly claim Plaintiff was referred to a psychiatrist in the hope that the Court will decide her claims are delusional.

2

categories for "walk" and "drive" noted that Plaintiff was not capable of engaging in these activities, having checked the box "None."

Defendants also assert that Dr. Main asserted "plaintiff was limited in her ability to perform simple and repetitive tasks and ability to perform complex and varied tasks," citing AR 506. Def. Memo at 2. However, with respect to the section of the application titled "patient is able to" perform certain specified activities (i.e. bending at the waist, squat at the knees, climb, reach above shoulders, kneel, crawl, use foot controls and drive), Dr. Main checked the box "0 – 33%", which, contrary to Defendants' statement, could as likely indicate that Plaintiff's capabilities for these activities was zero. This interpretation is more likely because Dr. Main had already indicated at another place on the form that Plaintiff's capability to walk and to drive was "None". Furthermore, to the question listed as "In an 8 hour day patient can lift/carry," the word "no" was handwritten on the form. [AR 0506] See also Def. Rule 56.1 Statement ¶ 15; Pltf. Counterstatement ¶ 15. In essence, Reliance not only circumscribes possible responses by drafting the form in the limiting way that it does and then seeks to use those limitations to deny benefits, it even refuses to acknowledge the responses given.

Defendants' final assertion in their "Procedural History" is that Dr. Main "indicated an expectation that plaintiff would reach maximum medical improvement in 3-4 months, pending further review," citing AR 506. Dr. Main did, in fact, check the box that says "3-4 months" in the section in the application form titled "WHEN DO YOU EXPECT PATIENT WILL ACHIEVE MAXIMUM MEDICAL IMPROVEMENTS?" [AR0506] He also wrote that he would review Plaintiff's condition after she had undergone the therapy he recommended. Furthermore, in to the section titled "WHEN THE ABOVE CHANGE

3

OCCURS, WHAT FUNCTIONAL CAPACITY WILL THE PATIENT RECEIVE?," Dr. Main checked the box that stated "IMPROVED OVER CURRENT BUT NOT FULL" rather than the box that stated "FULL RECOVERY." [AR 0506] Dr. Main was obviously guarded in his prognosis and while he thought Plaintiff's condition would probably improve somewhat, she would never fully recover and only time would tell how well she would respond to therapy?

Defendants' recitation of Plaintiffs' medical records is equally disingenuous. For example, Defendants assert that:

> On January 19, 1999, the first day she was unable to work, plaintiff consulted with Sheldon Lichtblau, M.D., an orthopedic surgeon. (AR 491) Dr. Lichtblau noted plaintiff's complaints of pain and recommended bed rest, muscle relaxant medication, pain killers and anti-inflammatory medication. (AR 491) She was scheduled for follow up in one week. (AR 491) During that time, Dr. Lichtblau recommended that plaintiff not return to work. (AR 492) He recommended that she remain out of work for an additional week on January 26, 1999. (AR 466)

Def. Memo at 8. Once again, Defendants' characterization of the record is both inaccurate and incomplete.

In fact, in his letter to Dr. Carmela Abraham dated January 19, 1999 [AR 491], the document to which Defendants referred for their foregoing assertion, Dr. Lichtblau stated, in pertinent part:

> On examination [Plaintiff] has pain and a marked decreased range of motion with flexion and extension. Left lateral flexion is normal. Right lateral flexion is painful and limited. ... She has a very positive right straight leg raising test.[6] She is very tender over the right sciatic notch as well as somewhat tender over the sacroiliac area.

---

[6] "This is a test for lumbosacral nerve root irritation for example, due to disc prolapse." www.gpnotebook.co.uk/simplepage.cfm?ID=-1308229618. Disc prolapse is a slipped disc. www.surgerydoor.co.uk/medical_conditions/Indices/D/disc_prolapse.htm.

4

> X-rays today show a loss of the normal lumbar lordosis.[7]
>
> This appears to be an acute disc.
>
> By way of treatment I have recommended bed rest, muscle relaxant medication, painkillers and anti-inflammatory medication. In a week we will see if there is a chance of solving problem without resorting to surgery.

[AR 0491] Moreover, Dr. Lichtblau stated that Plaintiff "has an acute Ruptured Disc & will be out of work for **at Least** 1 week," [AR 0492] (emphasis added.), obviously indicating that Plaintiff's period of disability could be longer. Finally, Dr. Lichtblau did not merely recommend that Plaintiff remain out of work for "an additional week," Def. Memo at 8, he stated that "Patient unable to return to work at present, to be reevaluated in 1 week." [AR 0466] This could obviously mean that Plaintiff's ability to return to work would be reevaluated in one week (Defendants' preferred interpretation), or that Plaintiff could not return to work at least at present and that Dr. Lichtblau would be seeing her again in one week. However, when read in conjunction with Dr. Lichtblau's statement, unmentioned by Defendants, that "it is undetermined when she will be able to return to work," [AR 0464], the latter interpretation is clearly the correct one.

Similarly, while Dr. Gatto stated he estimated Plaintiff would be able to return to work in one month, he did not state whether he meant full-time or part-time work, see [AR 0484] and he qualified that statement by indicating a "need to re-evaluate [patient] after above studies and treatments." [AR 0484] While Plaintiff's EMG[8] study revealed "mild neuropathic dysfunction in the muscles," [AR 0404], her MRI revealed "some

---

[7] The lower back has a natural curve. Excessive curvature puts pressure on the entire back. This condition is known as lumbar lordosis. www.uihealthcare.com/topics/bonesjointsmuscles/bone3435.html
[8] "The electromyography (EMG) test measures the response of muscle fibers to electrical activity. It's used to help determine the kind of muscle condition that might be causing muscle weakness, including muscular dystrophy and nerve dysfunctions." kidshealth.org/parent/system/medical/emg.html.

degenerative disc disease with some annular bulging at the L4-L5 level with some foraminal stenosis[9] from the disc annulus on the left side level to a mild to moderate degree." [AR 0402] Based on his findings at this time (April 22, 1999), Dr. Gatto stated:

> I feel that she should be able to return to work **at some limited capacity**. From her descriptions of when her pain comes on and numbness and tingling comes on that she would need ot (<u>sic</u>) have light duty capacity, no lifting or bending. She would need frequent positional changes with the ability to sit, stand and lie down during the day at certain periods. This may even be on an hourly basis as per her subjective description as to when these pains and parasthesias[10] come about. It may preclude her from driving a car or flying in an airplane for any length of time as this again per the patient seems to bring on her symptoms.

---

[9] "**Cervical foraminal stenosis**

**Types of pain from foraminal stenosis**
**Foraminal stenosis (narrowing of the cervical disc space) may arise without any disc herniation. The majority of symptoms are usually caused by one nerve root on one side. Typically, the condition is characterized by the following:**

- The pain develops slowly (versus acute pain)
- The pain may develop over many years
- The pain is not continuous
- The pain is related to an activity (such as bicycle riding) or position (such as holding the neck in an extended position)

The condition is caused by enlargement of a joint (the uncinate process) in the spinal canal and can be confirmed by either an MRI scan or a CT with myelogram.

**Treatment of pain from foraminal stenosis**
Unlike many other back or neck conditions, most conservative treatments for foraminal stenosis (such as pain medications or other modalities) are unlikely to be of much benefit. Traction may provide some pain relief.

Most often, patients choose either **activity modification** or **back surgery** to relieve pressure in the nerve root from foraminal stenosis." www.spine-health.com/topics/cd/overview/cervical/cerv02.html (emphasis in original).

[10] "Paresthesias: Tingling, prickling, numbness or burning sensations." www.wrongdiagnosis.com/sym/paresthesias.htm.

6

[AR 0403] (Emphasis added.) Of course, these restrictions precluded Plaintiff not only from returning to her former position, but effectively ruled out any employment whatsoever.

Defendants attempt to make much of Plaintiff's statement to a Reliance consultant in October 1999 [AR 0328] that were she to return to work, it would have to be to her former job or its equivalent. Def. Memo at 10. Defendants conveniently ignore two factors: (1) Plaintiff informed the consultant that "she cannot return to work until her physical problems subside," [AR 0328]; and (2) under the Plan, Plaintiff was disabled unless she could perform all of the material duties or her "regular occupation." Ex. 4 at 2.1,[11] which she could not. See Plaintiff's Memorandum of Law in Support of Her Motion for Summary Judgment ("Pltf. Memo") at 3-5 and citations therein.

While the remainder of Defendants' characterization of "Procedural History" and Medical Records" suffers from similar inaccuracies to those addressed above, Plaintiff has, in Section II of Pltf. Memo, pp. 2-15, set forth an accurate and extensive recitation of both her medical history and the administrative process engaged in by Reliance in denying her claim. Plaintiff, therefore, rather than reiterating that recitation here, incorporates it by reference and respectfully refers the Court's attention to that section of Pltf. Memo.

### III.  PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE PLAN'S THREE YEAR LIMITATIONS PERIOD

Defendants assert that Plaintiff's claims are barred by the Plan's internal three year limitations period. Plaintiff's Motion for Summary Judgment, inter alia, seeks

---

[11] All such references are to the exhibits attached to the Declaration of David S. Preminger filed in support of Plaintiff's Motion for Summary Judgment.

7

dismissal of Defendants' affirmative defense that her claims are time barred by this limitations period. See Pltf. Memo at 17-22. Again, rather than reiterate these arguments, Plaintiff incorporates by reference the arguments set forth in Section V. A. of Pltf. Memo, respectfully refers the Court's attention to that section of Pltf. Memo.

Defendants, in arguing for application of the abbreviated limitations period, Def. Memo at 5-8, cite no cases supporting them. Defendants instead cite Tarallo-Brennan v. Smith Barney, Harris Upham & Co., Inc., 1999 U.S. Dist. LEXIS 6787 (S.D.N.Y. 1999); Manginaro v. The Welfare Fund of Local 771 I.A.T.S.E., 21 F. Supp. 2d 284 (S.D.N.Y. 1998); Lugo v. AIG Life Ins. Co., 852 F. Supp. 187 (S.D.N.Y. 1994); and Patterson-Priori v. UNUM Life Ins. Co. of America, 846 F. Supp. 1102 (E.D.N.Y. 1994), for the proposition that ERISA governed employee welfare benefit plans, see ERISA § 3(1), 29 U.S.C. § 1002(1), may adopt limitations periods for benefit claims that are shorter than the six year statute of limitations that would otherwise be applicable, see Miles v. New York State Teamsters Conference Pension & retirement Fund, 698 F.2d 593, 598 (2d Cir. 1983), a proposition with which Plaintiff does not disagree.

However, in three of those cases, the issue raised by Plaintiff in support of her argument to dismiss Defendant's affirmative defense, i.e. that the abbreviated limitations period was not set forth in the Plan's summary plan description, was not raised. However, in Manginaro, supra, the defendants had cited two of then Judge, now Chief Judge Mukasey's prior decisions upholding abbreviated limitations periods. Chief Judge Mukasey then noted that those decisions were inapplicable because the parties in those cases had conceded that the abbreviated limitations periods in question had governed the claims. Id. at 294-295. Chief Judge Mukasey went on:

8

> To say that an SPD need not inform participants of the statute of limitations periods generally applicable to their claims[12] is not to say also that a statutory limitations period may be shortened by the Plan without suitable disclosure to the parties affected by such a provision. More specifically, although the six-year limitations period of N.Y. C.P.L.R. § 213 may be shortened by the Plan, such a limitation will not be enforced unless it was properly disclosed to plaintiffs via the SPD. See David v. NMU Pension & Welfare Plan, 810 F. Supp. 532, 535 (S.D.N.Y. 1992) (refusing to enforce shortened limitations period, inter alia, because SPD containing limitation on actions was not sent to plaintiff until after he retired); cf. Hart v. Anderson, 1981 U.S. Dist. LEXIS 12772, *15, No. 77 Civ. 2680 (MJL) (S.D.N.Y. Apr. 24, 1981), aff'd, 671 F.2d 492 (2d Cir. 1981) (table) (holding that limitation on actions was enforceable where SPD containing shortened period was mailed to plaintiff).

Id. at 294.

Defendants argue that Manginaro is not in accord with 29 C.F.R. § 2520.103-3(1). However, that provision specifically requires summary plan descriptions to include all "circumstances which may result in ... loss ... of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide ...."[13] Certainly an abbreviated limitations period can result in a loss of benefits (indeed, Defendants are specifically seeking that relief) which will not result if the six year generally applicable statute of limitations is applicable.

> The two-year limitation on actions contained in the Plan, which would have the effect of shortening the statute of limitations generally applicable to benefits claims under ERISA in New York by four

---

[12] I.e. New York's six year statute.

[13] Defendants argue that Reliance "delivered to the Plan certificate booklets which identified the terms of the policy, including the contractual limitations period. The certificate booklets were distributed to PaineWebber employees, including Ms. Shore." Def. Memo at 7. Defendants have submitted no sworn statement that this procedure was followed or that Ms. Shore ever received the "certificate booklets." Pursuant to F. R. Civ. Pro. 56(d), such statements must be "made on personal knowledge" and "be admissible in evidence." Defendants' statements do not meet this standard and must be disregarded. Moreover, Ms. Shore, in her sworn Declaration in Support of Plaintiff's Motion for Summary Judgment, specifically denies ever having been provided with any such booklet. Id. at ¶¶ 4-6. Moreover, as shown above, Defendants never provided the policy applicable to Ms. Shore until after this litigation was commenced.

> years, qualifies as a "circumstance[] which may result in disqualification, ineligibility, or denial or loss of benefits" that should have been disclosed to plaintiffs via the SPD. 29 U.S.C. § 1022(b); cf. Dodson v. Woodmen of the World Life Ins. Soc'y, 109 F.3d 436, 439 (8th Cir. 1997) (holding that time limit for filing a claim for benefits with plan must be disclosed in SPD). Absent such a provision, the SPD in this case "had the effect of . . . failing to inform" plaintiffs of a key limitation on their right to recover benefits under the Plan. 29 C.F.R. § 2520.102(b). Accordingly, I will apply the six-year statute of limitations of N.Y. C.P.L.R.§ 213 to plaintiffs' benefits claims.

Id. at 293-294. Defendants make what can only be deemed a desperate attempt to distinguish Dodson on the basis that it dealt with the time limit for filing a claim rather than the time limit for filing litigation. The distinction, if it exists, is without a difference. Either results in a loss of benefits to which the participant or beneficiary might otherwise be entitled.

Finally, Defendants fail to mention the Second Circuit's decision in Burke v. Kodak Retirement Income Plan, 336 F.3d 103,110 (2d Cir. 2003), wherein the Court specifically held that where the summary plan description and the Plan instrument are, as here, in, conflict, the summary controls, and cited Manginaro with approval.[14]

### IV.   PLAINTIFF IS ENTITLED TO BENEFITS

Finally, Defendants assert that they correctly denied Plaintiff's claims. Def. Memo at 16-25. The two bases asserted for the denial are that Plaintiff failed to demonstrate, in specific, that she could not perform the material duties of her occupation and further that she failed in general to establish disability.

Plaintiff's Motion for Summary Judgment, inter alia, addresses the actual material duties of Plaintiff's occupation rather than simply those set forth in the Department of

---

[14] Defendants cannot have overlooked this holding; they cite Burke for other purposes. See Def. Memo at 25.

Labor's Dictionary of Occupational Titles ("DOT") relied on by Defendants. See Pltf. Memo at 3-5. Plaintiff's Motion also addresses the inadequacy of Defendants' review and fully substantiated her claim for benefits under the heightened arbitrary and capricious standard of review. See id. at 15-34. Again, rather than reiterate these arguments, Plaintiff incorporates them by reference and respectfully refers the Court's attention to those pages of Pltf. Memo.

Nonetheless, Plaintiff addresses a few points raised by Defendants.

### A.   Job Description

In an effort to justify their reliance on the DOT's description of Plaintiff's job title, rather than the actual material duties of her job, Defendants' assert that Plaintiff only provided a "quasi job description." Def. Memo at 19. First, this is simply not true. Plaintiff provided a detailed description of the myriad duties of her job. See [AR 0091].

Defendants' attempt to establish in their Memo that the duties that Plaintiff listed are not material or are not such as to preclude employment. However, the administrative record, which, as Defendants concede, is the only evidence that the Court may consider, contains no refutation that the duties listed by Plaintiff are not material or that they do not preclude her employment. The administrative record is devoid of any discussion of these issues by Defendants but replete with evidence submitted by Plaintiff that substantiates her claim. Defendants' cannot attempt to provide justification for the denial of benefits in their Memo that does not exist in the administrative record.

In Black v. Unum Life Ins. Co. of America, 324 F. Supp. 2d 206 (D. Me. 2004), which presents circumstances startlingly similar to those here, the Court rejected the

plan's reliance on a DOT job description in favor of the actual duties of the claimant's job which had been submitted by the claimant as part of his claim. Similarly, in <u>Freling v. Reliance Standard Life Ins. Co.</u>, 315 F. Supp. 2d 1277 (D. Fla. 2004), the plaintiff was a physician specializing in OB/GYN. The Court rejected the plan's use of the DOT job description because the plan at issue did not include that description.[15] The DOT description in <u>Freling</u> did not include surgery and delivery of babies which were material duties of the plaintiff's job and which he could not perform because of a damaged hand.

### B. Defendants' Propensity for Reviewing Only the Evidence They Like

As Plaintiffs have shown in their Memo, Defendants' and their chosen reviewing physicians systematically ignored evidence of Plaintiff's disability and seized on statements out of context to justify a preordained conclusion. One example of this selectivity is Dr. Hauptman's statement that Plaintiff was not taking prescription pain medication, thus ignoring the numerous prescription pain medications Plaintiff was taking which severely limited her ability to function. <u>See e.g.</u> Pltf. Memo at 30-31, 33 and citations therein. Moreover, Dr. Hauptman did not examine the Plaintiff or even speak to her or her physicians. <u>Id.</u> at 28 and citations therein. Similarly, Dr. Hauptmen did not discuss the numerous documents submitted by Plaintiff's treating physicians which establish her disability nor does he attempt to refute them in any way.

In the recent case of <u>Gaither v. Aetna Life Ins. Co.</u>, 388 F.3d 792 (10th Cir. 2004), the plaintiff had multiple myeloma and could not work because, as here, the narcotics he used to control pain prevented him from performing his job, yet the plan made no attempt to determine the extent of this problem. The court held that

---

[15] Nor does the Plan here include the DOT job description relied on by Defendants.

12

"fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." Id. at 807 (citation omitted). Here, where the information in the record is not limited to a "suggestion" but rather affirmatively establishes Plaintiff's entitlement to benefits, Defendants simply ignored it. As shown in Pltf. Memo, a plan cannot simply ignore "a claimant's reliable evidence, including the opinions of a treating physician." Pltf. Memo at 26 quoting Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be denied and Plaintiff's motion for summary judgment should be granted in all respects, together such other and further relief as to this Court may seem just and proper.

Dated:    New York NY
          February 22, 2005

Respectfully submitted,
Rosen Preminger & Bloom LLP
Attorneys for Plaintiff


By:_____/s/_____
   David S. Preminger (DP 1057)
   708 Third Avenue, Suite 1600
   New York, New York 10017
   (212) 682-1900