David S. Preminger (DP 1057)
Rosen Preminger & Bloom LLP
708 Third Avenue, Suite 1600
New York, NY 10017
(212) 682-1900

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
VALERIE A. SHORE,

        Plaintiff,

    v.                                          No. 04 CV 4152 (KMK)

PAINEWEBBER LONG TERM DISABILITY      ECF Document
PLAN, *et al.*.

        Defendants.
-----------------------------------------------------------x


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF HER MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

I. Defendants' Affirmative Defense that this Action Is Barred by the Policy's Three Year Limitations Period Should Be Dismissed ...................... 1

II. Plaintiff Has Established that Her Occupation Was Not Sedentary ................... 3

III. Plaintiff Is Entitled to Benefits ................................................................. 5

IV. A Remand Is Not Required ..................................................................... 8

V. Conclusion .......................................................................................... 11

Plaintiff Valerie A. Shore filed her motion for summary judgment on January 11, 2005. This memorandum of law is submitted in further support of that motion.

**I.    Defendants' Affirmative Defense that this Action Is Barred by the Policy's Three Year Limitations Period Should Be Dismissed**

Defendants' Response to Plaintiff's Memorandum of Law in Support of Her Motion for Summary Judgment ("Defs. Memo") argues in support of dismissal based on the policy's three year limitations period purportedly because this case is in some way different from Manginaro v. The Welfare Fund of Local 771, I.A.T.S.E., 21 F. Supp. 2d 284 (S.D.N.Y. 1998). In Manginaro, the court held that the failure of the summary plan description ("SPD") to include the insurance policy's two year limitations period required New York's six year statute of limitations to be applicable. The court also stated that even if the participant had not seen the SPD, he might have learned of the two year limitations period from co-workers had it been included in the SPD. Id. at 296. Defendants then attempt to argue that because the full policy herein contained the three year limitations period, and because the policy herein was available upon request, Plaintiff's complaint should be dismissed. This would stand ERISA's Reporting and Disclosure requirements, ERISA §§ 101-111, 29 U.S.C. §§ 1021 - 1032, on their heads.

ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1), requires the plan administrator to provide a copy of the plan's SPD to each plan participant within 90 days after he becomes a participant. The SPD must be provided regardless of whether it is requested by the participant. On the other hand, the administrator is only required to furnish a copy of the full plan upon written request by a participant. ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). It is because the SPD must be provided as a matter of course that the court in Manginaro found that a participant might learn of its provisions from his

co-workers even if he had not read the SPD. The plan document, on the other hand, is not required to be distributed to participants as a matter of course and Defendants freely acknowledge they did not do so. See affidavit of Leticia Waelz accompanying Defs. Memo.[1] Thus, it is unreasonable to assume that Plaintiff might have learned of the contents of a document that was not provided to her or her co-workers.

It is for this reason that the Second Circuit has decided that:

> Where the terms of a plan and the SPD conflict, the SPD controls. See Heidgerd v. Olin Corp., 906 F.2d 903, 907-08 (2d Cir. 1990). This may be startling at first blush but it makes sense when it is recalled that the SPD "will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." Id. at 907.

Burke v. Kodak Retirement Income Plan, 336 F.3d 103, 110 (2d Cir. 2003).

While federal courts look to state law to determine statutes of limitations for ERISA benefit claims, Miles v. New York State Teamsters Conference Pension & Retirement Fund, 698 F.2d 593 (2d Cir. 1983), contractual limitations periods that are permitted, as here, by statute,[2] are not statutes of limitations; rather the enabling statute "set[s] a minimum standard for limitations periods in insurance policies." Mattson v. Farrell Distributing Corporation, 163 F. Supp. 2d 411, 416 (D. Vt. 2001). Thus, the

---

[1] Plaintiff's Rule 56.1 Statement ¶¶ 66-81 set forth the circumstances concerning the SPD and the failure of Defendants to provide the correct insurance policy until after this action was commenced. Defendants' counterstatement either admits these assertions or, to the extent it denies them, states Defendants "lack knowledge sufficient to form a belief" as to the truth of Plaintiffs' assertions. Local Rule 56.1(d) requires that "each statement controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Defendants, at least with respect to ¶¶ 67, 68, 71-75 and 80, have failed to comply with Local Rule 56.1(d) and Plaintiffs' statements must be accepted as true. To the extent Defendants claim they lack knowledge, they have made no request pursuant to F.R.Civ.Pro. 56(f).

[2] See New York Insurance Law § 3221(a)(14).

policy's abbreviated limitations period is a plan term that can "result in ... loss of benefits" and was required to be in the SPD. ERISA § 102, 29 U.S.C. § 1022.

While New York permits parties to shorten the period within which suit must be brought by contract,[3] that right is not without its limits. Such limitations are not favored and are to be construed strictly. Chase v. Columbia National Corporation, 832 F. Supp. 654, 659 (S.D.N.Y. 1993); 75 N.Y.Jur. 2d § 10. If it would be inequitable to apply the shorter limitations period, courts may refuse to apply it. Id. at § 29. Indeed, New York General Obligations Law § 17-103(4)(b) specifically provides that a court may find that because of the conduct of a party, it would be "inequitable to permit him to interpose the defense of statute of limitations." And one circumstance in which this is deemed particularly appropriate is when a fiduciary is guilty of a failure to disclose. 75 N.Y.Jur. 2d § 32. When, as here, the fiduciary has failed to disclose the limitations period itself, it seems to follow naturally that the defense is unavailing.[4]

## II.   Plaintiff Has Established that Her Occupation Was Not Sedentary

In an attempt to bolster their argument that Plaintiff's occupation was "sedentary,"[5] Defendants essentially deny the existence of material that is in the record or make up justifications that are not in the record. For example:

---

[3] Id. Section 3221(a) requires insurance policies to contain the provisions in its subparagraphs or more favorable provisions. While this section would seem to indicate the legislature's decision that an abbreviated (no less than two years) limitations period is reasonable for insurance purposes, that does not and should not result in a finding of reasonableness under ERISA or, particularly, the circumstances of this case.

[4] Abbreviated limitations periods are enforceable if agreed to. John J. Kassner & Co. v. City of New York, 46 N.Y. 2d 544, 550, 415 N.Y.S. 2d 785, 789 (1979). Plaintiff, who paid the premiums herself for long term disability coverage certainly never agreed to a provision of which she was never informed.

[5] Plaintiff's Rule 56.1 statement asserts at ¶ 7 that her occupation was not sedentary citing [AR0091]. Defendants' Counterstatement at ¶ 7 denies this but offers no citation to support the denial. Accordingly, it is admitted.

3

1.  Defendants assert that Reliance considered the duties of Plaintiff's occupation but decided "that with reasonable assistance that is available to the general public, plaintiff could nonetheless function." Defs. Memo at 5.[6] Defendants provide no citation for this finding because the Administrative Record is devoid of any such finding having been made. Moreover, the Administrative Record is devoid of any determination as to what assistance is necessary for Plaintiff to function or in what way it "is available to the general public."

2.  More egregiously, Defs. Memo at 6 baldly asserts that

> Reliance Standard not only properly classified plaintiff's occupation as a sedentary strength level occupation,[7] but the company also advised plaintiff of the manner in which it classified her occupation when initially denying the claim. Moreover, even now when plaintiff argues that her occupation is not a sedentary level strength occupation, she proposes no contrary strength level category that should be applied.[8] As plaintiff did not raise this issue during the administrative level (*sic*), she should not be permitted to do so now.

One can only wonder what Administrative Record Defendants are reading. In Reliance's June 19, 2000 letter denying benefits, all that was stated about Plaintiff's occupation was that she was capable of "sedentary desk work" and that her occupation required her to perform at "a sedentary level." [AR0266-AR0268] This letter says nothing about the duties Plaintiff was required to perform. In her appeal, Plaintiff's attorneys discussed the duties of her job at length [AR0045-AR0046] and attached an exhibit that set forth all of those duties. [AR0091] Reliance simply ignored Plaintiff's

---

[6] Defendants make the same assertion in point c. of their memo. Defs. Memo at 6.

[7] Plaintiff does not know what Defendants mean when they say a "sedentary strength level occupation." This term is not found in the Administrative Record. Indeed, previously, Defendants argued that they used the definition for Plaintiff's job title in the Dictionary of Occupational Titles which characterizes her "job title" as sedentary. [AR0006]

[8] Defendants thus concede that if a claimant's job duties or infirmities do not fit neatly into one of Reliance's little boxes, Reliance simply pounds a square peg into a round hole to deny benefits.

4

actual duties and cubbyholed her based on the Dictionary of Occupational Titles description of her occupation. Thus, Reliance wrote:

> While we understand your claim that Ms. Shore's *job* requires a great deal of physical exertion, her *occupation* is classified as sedentary duty by the United States Department of Labor's Dictionary of Occupational Titles ("Dot"). Her claim for benefits has been evaluated based upon her ability to perform a sedentary duty occupation, which according to the DOT requires the ability to lift/carry and push/pull up to 10 pounds occasionally and is performed mostly from a sitting position. It may require sitting or standing for brief periods of time.

[AR0006] Given the actual nature of Plaintiff's job, Reliance obviously decided (although incorrectly) the issue it wanted to decide (can Plaintiff perform the responsibilities of the occupation as set forth in the DOT) rather than the one it had a fiduciary responsibility to decide (could Plaintiff do her job).

### III.    Plaintiff Is Entitled to Benefits

For the most part, the arguments raised in part c. of Defs. Memo (pp. 6-8) have been addressed in Plaintiff's earlier submissions and will not be repeated here. Three issues nonetheless require comment.

First, Defendants contend that tests did not suggest a spinal pathology for Plaintiff's urinary problems citing [AR0365]. Defs. Memo at 7. This is incorrect. The test results were inconclusive. However, Dr. Vapnek stated that "[t]he elevation in the urethral sphincter pressures is commonly seen in those with back problems as well as those who simply have tight pelvic floors. ... It might be instructive to repeat the study when the patient is symptomatic." [AR0365] Reliance never asked that the test be repeated. If Reliance thought this was an issue, it had an affirmative responsibility to garner the information it needed. Gaither v. Aetna Life Ins. Co., 388 F.3d 759 (10th Cir.

5

2004). However, further testing was not necessary. As Dr. Main stated, "[i]t is a common situation that patients have concurrent back pain, sciatica, and other lower extremity symptoms in conjunction with urinary complaints, although no obvious cause can be found for the latter." [AR0360]

Second, Defendants contend that Dr. Hauptman, upon whose report Reliance purportedly based its denial of benefits after appeal, performed a "peer review of plaintiff's medical records." Defs. Memo at 7. Dr Hauptman did nothing of the kind. A peer review is conducted by a hospital or medical practice in order to assess and improve the quality of care. See e.g., Lilly v. Rees, 112 A.D. 2d 788, 789, 492 N.Y.S. 2d 286, 287 (4th Dep't. 1985). See also N.Y. Education Law § 6527(3) (concerning the confidentiality of the records of "a committee having the responsibility of evaluation and improvement of the quality of care rendered in a hospital," i.e. a "peer review" committee). Thus, Dr. Hauptman did not conduct a peer review of plaintiff's physicians. Rather, he reviewed their written submissions (although he never spoke to them or asked them for additional information) and selectively excerpted from them or misrepresented them in order to reach the preordained conclusion that Plaintiff is not disabled.

Defendants also take issue with Plaintiff's argument that Dr. Hauptman was not qualified to make a determination of Plaintiff's condition because his specialties are internal medicine and gastroenterology, and both are entirely inapplicable to Plaintiff's condition.[9] See Plaintiffs' Memorandum of Law in Support of her Motion for Summary

---

[9] While Defendants have denied that these specialties are not relevant to Plaintiff's claim, see Plaintiff's Rule 56.1 Statement ¶ 42; Defendants' Counterstatement ¶ 42, they have failed to cite to any admissible evidence in support of their denial. As such, the statement is admitted. Local Rule 56.1(d)..

Judgment at 28; Defs. Memo at 8 n.4. Defendants attempt to contradict this fact by asserting without citation to anything that Dr. Hauptman is "Board Certified in Quality Assurance Review." Id. However, Quality Assurance Review is peer review. See www.health.state.mn.us/divs/hpsc/mcs/qoc.htm; Grider v. Keystone Health Plan Cent., Inc., 2001-CV-05641, 2003 U.S. Dist. LEXIS 16551, *42 (E.D. Pa. September 18, 2003). Thus, even if Dr. Hauptman is Board certified in Quality Assurance Review, he performed no such review here.

While Defendants contend that Dr. Hauptman "completed a thorough and detailed review of plaintiff's claim which is reliable[,]" Defs. Memo at 8 n.4, Plaintiff's have established, and Defendants have admitted, that Dr. Hauptman spent fewer than five hours reviewing Plaintiff's medical records and preparing his report for Reliance. See Plaintiff's Rule 56.1 Statement ¶ 44; Defendants' Counterstatement ¶ 44. Moreover, Plaintiff's previous submissions have detailed Dr. Hauptman's selective references to Plaintiff's medical records in order to justify his decision while omitting reference to all of the data which substantiates Plaintiff's disability but which Dr. Hauptman could not refute.

Third, Plaintiff's Rule 56.1 Statement at ¶ 23 asserts that Plaintiff's medications caused drowsiness and interfered with her ability to concentrate, citing [AR0099, AR0181, AR0273]. Defendants deny this, without citation to any evidence, asserting that the portions of the Record cited by Plaintiff do not "indicate that plaintiff's medication caused drowsiness and no cognitive testing has demonstrated that the medication has caused plaintiff an inability to concentrate."

7

Once again, Defendants simply distort what is in the Record. For example, at [AR0099], Dr. Spiera specifically states that "the use of these medications interferes with her ability to concentrate;" at [AR0181], Plaintiff asserts that "[t]he medication for my pain makes me very foggy. I can't remember what I have said or just thought. I promise to call a friend or something and never remember my commitments. I also don't remember what we talked about often. ... I just don't remember much because of the medications[.]"

Given the nature of the medications that Plaintiff takes, Defendants refusal to accept her statement as to their affect simply defies human experience. Moreover, what "cognitive testing" would Defendants have liked? They certainly requested none and the Plan does not require substantiation of all complaints by cognitive testing. As set forth in Plaintiff's prior submission, the Second Circuit has long recognized that a claimant's subjective complaints, if believable, must be accepted. Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127, 136 (2d Cir. 2001).

## IV. Defendants' Rule 56.1 Counterstatement Is Improper

In addition to the selected references above, Defendants' Counterstatement pursuant to Local Rule 56.1 generally violates Local Rule 56.1(d)'s requirement that any denial be supported by admissible evidence. Defendants' Counterstatement almost uniformly violates this Rule. See Defendants' Counterstatement ¶¶ 7, 13, 14, 18-23, 25, 30 a-j, 30 (sic), 31-33, 37, 39 (a-i), 42, 45-49, 51-53, 56, 57, 59, 61-65, 67, 68, 71-75, 78, 80, 82-92. Accordingly, all of the corresponding statements in Plaintiff's Local Rule 56.1 Statement are deemed admitted.

## IV.  A Remand Is Not Required

Defendants argue, without reference to any authority, that because Reliance has never made a determination as to Plaintiff's eligibility under the definition of disability that applies after the first 24 months of benefits, that the Court must remand this matter to Reliance for such a determination even if the Court determines Reliance to have been in error in ceasing benefit payments in the first instance. The Court is under no such obligation.

The Second Circuit has held that if the arbitrary and capricious standard of review applies, and the record is incomplete, it cannot be concluded "that there is no possible evidence that could support a denial of benefits." Miller v. United Welfare Fund, 72 F.3d 1066, 1074 (2d Cir. 1995). However, remand of an ERISA action seeking benefits is inappropriate "where the difficulty is not that the administrative record was incomplete but that a denial of benefits based on the record was unreasonable." Zuckerbrod v. Phoenix Mut. Life Ins. Co., 78 F.3d 46, 51 n.4 (2d Cir. 1996). Here, a complete record which establishes that Plaintiff is incapable of performing even sedentary work was in Reliance's possession; it just chose to ignore the evidence in order to avoid payment. Based on that record it was arbitrary and capricious to deny benefits under either definition of disability. See also Miller, supra at 1075, Calabresi C.J., concurring in part and dissenting in part (Agreeing that "[w]hen a fully developed evidentiary record permits only one conclusion, the district court may properly impose that result itself." But also finding that "when the trustees have demonstrated a manifest unwillingness to give fair consideration to evidence that

supports the claimant, the claim should not be returned to the trustees" and disagreeing with the majority as to whether such unwillingness had been proven.)

Unfortunately, the claims procedure which was followed in this case is not unusual. It is not as if this is the only ERISA plan which Reliance insures and for which it makes eligibility determinations. Reliance obviously does not comply with ERISA's claims procedure requirement of a full and fair review because it does not want to. Compliance would obviously require more training of its employees, more paperwork, and more expense for physicians who would actually have to examine claimants and thoroughly review their medical records. Also, and perhaps more to the point, Reliance would have to grant more claims.[10]

> "What we got here," said Strother Martin, "is a failure to communicate."*
> This is an all-too-common occurrence when ERISA-covered health benefit plans deny claims. While a health plan administrator may - indeed must - deny benefits that are not covered by the plan, it must couch its rulings in terms that are responsive and intelligible to the ordinary reader. See 29 C.F.R. § 2560.503-1(f). If the plan is unable to make a rational decision on the basis of the materials submitted by the claimant, it must explain what else it needs. Id. If ERISA plan administrators want to enjoy the deference to which they are statutorily entitled, they must comply with these simple, common-sense requirements embodied in the regulations and our caselaw. The plan here did not.

(*Cool Hand Luke (Warner Bros. 1967).) Booton v. Lockheed Medical Benefit Plan, 110 F.3d 1461, 1465 (9th Cir. 1997). In light of the plan's failure to comply with ERISA's claims procedures, the court in Booton granted summary judgment to the plaintiff; it did not remand. Id.

---

[10] Reliance's decision to terminate Plaintiff's benefits in June 2000 does not explain in what way, if any, her condition had improved from that which had caused Reliance to grant benefits. Because the termination decision was only 10 months after benefits were first approved, it would appear that the review of Plaintiff's status was prompted more by fiscal concerns than any doubt as to her physical condition. In June 2000, at Plaintiff's monthly benefit rate of $4,239.05, Reliance was looking at future payments totaling $1,089,435.80.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment on her first, second and third claims for relief and dismissing Defendants' affirmative defenses should be granted in all respects, together such other and further relief as to this Court may seem just and proper.

Dated:   New York, New York　　　　　　Respectfully submitted,
　　　　　March 8, 2005　　　　　　　　　Rosen Preminger & Bloom LLP
　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff

　　　　　　　　　　　　　　　　　By:_____s/_____
　　　　　　　　　　　　　　　　　　　David S. Preminger (DP 1057)
　　　　　　　　　　　　　　　　　　　708 Third Avenue, Suite 1600
　　　　　　　　　　　　　　　　　　　New York, New York 10017
　　　　　　　　　　　　　　　　　　　(212) 682-1900