UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
VALERIE A. SHORE,

            Plaintiff,

   v.                                                                    No. 04 CV 4152 (RJS)

PAINEWEBBER LONG TERM DISABILITY        ECF Document
PLAN, *et al.*

            Defendants.
---------------------------------------------------------------x

## DECLARATION OF DAVID S. PREMINGER IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS AND EXPENSES

DAVID S. PREMINGER declares pursuant to 28 U.S.C. § 1746 as follows:

1.    I am a partner in the law firm of Rosen Preminger & Bloom LLP ("RP&B"). I am counsel for the plaintiff, Valerie A. Shore in this action, and make this declaration in support of the accompanying motion for an award of attorney's fees and reimbursement of litigation costs and expenses, currently in the amount of $97,335.46.

### ATTORNEYS' QUALIFICATIONS

2.    I am a 1972 graduate of the New York University School of Law and was admitted to the bar in New York in 1973. I am admitted to practice in the United States District Courts for the Southern, Eastern, Western and Northern Districts of New York, the United States Courts of Appeals for the Second, Seventh, Ninth and District of Columbia Circuits and the United States Supreme Court and have worked on cases in each of these as well as other federal courts.

3.    From 1972 to 1974, I was a Reginald Heber Smith fellow and was assigned to Brooklyn Legal Services Corp. B where I began litigating employee benefit cases. From 1974 to

1979 I was a senior attorney with Legal Services for the Elderly Poor in Manhattan where approximately eighty (80%) percent of my caseload consisted of employee benefit litigation. From 1979 to 1980, I was a Supervisory Trial Attorney with the New York District Office of the United States Equal Employment Opportunity Commission.  In 1980 I became associated with my present firm and became a partner in 1983.  Approximately ninety (90%) percent of my current caseload is made up of employee benefit cases principally pursuant to ERISA.

      4.      I have written two law review articles in the field of employee benefit law: <u>What Do You Get with the Gold Watch?, An Analysis of the Employee Retirement Income Security Act of 1974</u>, 17 <u>Arizona Law Review</u> 426 (1975); and <u>Aspects of Federal Jurisdiction Under Sections 302(c)(5) and 302(e) of the Taft-Hartley Act - The "Sole and Exclusive Benefit" Requirement</u>, 4 <u>Texas Southern Law Review</u> 1 (1976).

      5.      Since 1975 I have lectured on employee benefit litigation throughout the United States at various law schools and under the auspices of various organizations including the American Bar Association and the Practicing Law Institute.  I have also testified at hearings before Congress and the New York State Attorney General's Office regarding enforcement of pension rights.

      6.      Since 1998 I have been the co-chair of the Subcommittee on Fiduciary Responsibility of the Employee Benefits Committee of the Labor and Employment Section of the American Bar Association and was previously co-chair of the Subcommittee on ERISA Preemption and the Subcommittee on Reporting and Disclosure.  In that capacity, I am an editor of the chapter on fiduciary responsibility of <u>Employee Benefits Law</u>, an exhaustive treatise of the subject published by BNA Books.

7. From 1985 to 1988 I was a member of the Committee on Legal Problems of the Aging of the Association of the Bar of the City of New York and the Chair of the Subcommittee on Employee Pension and Welfare Benefit Plans. I have subsequently been a member of that Association's Committee on Employee Benefits from 1990 to 1993, from 1996 to 1999, and again from 2002 to 2005.

8. I am and have been since 2000 a charter fellow of the American College of Employee Benefits Counsel, an organization whose members must have been involved in employee benefit law for at least 20 years and have engaged in significant public service during that time.

9. Among the pension cases I have litigated either as sole counsel or co-counsel, are: *Nager v. Teachers' Retirement System of the City of New York*, Index No. 119294/02 (Supreme Court N.Y. Co.) (class action alleging failure to include certain compensation in pension calculation; settlement granting full retroactive and prospective relief valued in excess of $150 million approved 7/19/07); *Banyai v. Mazur*, 00 CV 9806 (SHS) (S.D.N.Y.) (class action alleging improper termination of death benefit plan and misappropriation of $77.5 million by sponsoring union; $40+ million settlement approved 3/27/07); *Williams v. American Mortgage Holdings, Inc.*, 04-CV-5299 (JS) (ARL) (E.D.N.Y.) (class action alleging that employer had failed to provide promised benefits; $2.4 million settlement approved 3/16/07); *Slupinski v. First Unum Life Ins. Co.*, 99 CV 0616 (TPG), 2006 U.S. Dist. LEXIS 55545 (S.D.N.Y. August 7, 2006) (reversing insurance company's denial of long term disability benefits and granting full retroactive and prospective benefits); *Kale v. Boeing Corporation*, 01 Civ. 7159 and 03 CV 5048 (GBD) (S.D.N.Y.) (class action alleging improper use of trust fund assets by plan sponsor; $40 million settlement approved by Judge Daniels on 11/20/03); *Hartline v. Sheet Metal Workers'*

*National Pension Fund et al.*, No. 98-CV-1274 (RMU) (pension plan permitted Union to make contributions on more favorable basis than other employers; Union agreed to modify contribution practices); *Warner v. Foremost Designers Ltd.*, No. 00 CV 5466 (KMW) (plan impermissibly eliminated lump sum benefit; settled for full lump sum); *Legreid v. Tausend*, No. 94 CV. 4823 (S.D.N.Y.) (conversion of profit sharing plan to ESOP for less than "adequate consideration"; $622,000 class action settlement); *Miller v. Pacific Lumber Company*, No. C-89-3500-CW (N.D.Cal.) (improper selection of annuity provider for terminated ERISA pension plan; $7,000,000 class action settlement); *Gruby v. Brady*, 92 CV 3888 (SWK) (S.D.N.Y.) (financially insupportable benefit increase resulting in subsequent substantial decrease in benefits; class action settlement valued at $30 million); *In re Masters, Mates & Pilots Pension Plan and IRAP Litigation*, Lead File No. 85 CV 9545 (VLB) (S.D.N.Y.) (improper selection and monitoring of investment manager; $28 million dollar class action settlement); *Fase v. Seafarers Welfare and Pension Plan*, 432 F.Supp. 1037 (E.D.N.Y. 1977), appeal dismissed 574 F.2d 72 (2d Cir. 1978) (improper denial of retroactive disability pension benefits; summary judgment granted to plaintiff); *Connolly v. Pension Benefit Guaranty Corporation*, 581 F.2d 729 (9th Cir. 1978) (amicus curiae), cert. den'd 440 U.S. 935 (1979) (issue was correct interpretation of the definitions of "defined benefit plan" and "defined contribution plan"); *Pernelli v. Local 58 Candy and Confectionary Union and Industry Pension Fund*, 478 F.Supp. 26 (E.D.N.Y. 1979) (issue of plan interpretation; summary judgment granted to plaintiff); *In re Marsh*, 12 E.B.C. 1966, 1990 U.S. Dist. Lexis 5920, No. 90 CV 1716 (KTD) (S.D.N.Y. May 16, 1990) (proceeding commenced in state court concerning proper beneficiary of a death benefit was removed to federal court; motion to remand denied); *Watson et al. v. Horn & Hardart Company Pension*

*Plan*, 77 CV 3686 (CES) (issue of plan interpretation; class action settlement valued at over $1,000,000).

10.  The only other attorneys for whom payment of fees is sought are:

Rose A Saxe, a 2000 Yale Law School graduate.  Ms. Saxe was an editor of the Yale Law Journal.  Prior to joining RB&B, she clerked for the Honorable Janet Bond Arterton of the United States District court for the District of Connecticut from 2000 to 2002 and then for the Honorable Sonia Sotomayor of the United States Court of Appeals for the Second Circuit.  Ms. Saxe has since left RP&B for a position with the American Civil Liberties Union.

Paula G. A. Ryan is a graduate of Harvard Law School who has been engaged in the practice of law for over 30 years.

## WORK DONE

11.  My responsibilities for this litigation on behalf named plaintiff have involved, *inter alia*, participation in: communications with Ms. Shore and opposing counsel; drafting the complaint;[1] researching and drafting the motion papers in support of summary judgment, the papers to in opposition to defendants' motion for summary judgment, and the reply papers in support of summary judgment, including those parts of plaintiff's briefs that sought dismissal of defendants' ill-conceived statute of limitations defense, compliance with Judge Karas' order regarding remand, and preparation of this motion.  Ms. Saxe's work involved most of the drafting of the complaint and the opening summary judgment papers..  Ms. Ryan's involvement was limited to preparation of the counter statement pursuant to Local Rule 56.1.

## BILLING PROCEDURES

12.  Throughout the course of this litigation, RP&B has kept track of time on time sheets.  A copy of a blank time sheet is attached as Exhibit 2.  As may be seen from Exhibit 2,

---

[1] A copy of which is attached as Exhibit 1.

one enters the date, matter worked on, the number of hours worked on the matter that day (time is kept in intervals of tenths of an hour) and a description of the work done. This information is then typed into the firm's computer billing system verbatim.

13. Once the information on the individual timekeeper's time sheets has been typed verbatim into the billing computer, "time edit" sheets are generated. These documents, printed by timekeeper, set forth verbatim the information on the time sheets submitted by that timekeeper and are then reviewed for spelling, punctuation, etc. by that timekeeper. After correction of these time records, the computer generates "work in process reports." These documents set forth the information on the time sheets grouped by client and matter.[2] A work in process report reflecting all time billed[3] from the commencement of RP&B's involvement in this matter through December 2, 2007 is attached as Exhibit 3. All costs and expenses were separately typed into the billing computer on an item by item basis setting forth the nature of the expense, the amount, and the date incurred.

14    Once work in process reports have been reviewed for accuracy, actual bills may be printed and sent to clients.

**FEES AND COSTS**

15. RP&B's total fees (at current rates[4]) recorded through December 2, 2007, as evidenced by the RP&B's billing records (*see* Exhibit 3), are as follows:

---

[2] Many clients have more than one ongoing matter at a time (*e.g.*, more than one lawsuit).
[3] A significant amount of time spent on ministerial matters or on matters which took only a few minutes has not been billed.
[4] Reimbursement of fees is sought at current rather than historical rates. Historical rates are the rates set forth on the work in process report. *See* Exhibit 3.

6

**Fees**

| Timekeeper | Hours | Billing Rate | Total |
|---|---|---|---|
| D. Preminger | 99.8 | $610.00 per hour | $60,878.00 |
| R. Saxe | 124.9 | $250.00 per hour | 31,225.00 |
| P. Ryan | 7.7 | $400.00 per hour | 3,080.00 |

Total Hours: 232.4                              Total Fees: $95,183.00

## HOURLY RATES

16.     The hourly rates charged in this matter are those typically charged by RP&B and which are paid by those clients whose cases are not handled on a contingency basis.  Moreover, they are below those charged by attorneys of comparable experience in employee benefits litigation.

## COSTS

17.     RP&B has expended $2,152.46 in costs through November 30, 2007.  *See* Exhibit 4.

18.     The total amount of fees and costs thus far is $97,335.46.  Further expenditure of time and costs will be required in order to prepare reply papers in support of this motion and if the Court schedules oral argument.  Information on such fees and costs will be provided at a later date.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 3, 2007 in New York, New York

/s/  *David S. Preminger*
DAVID S. PREMINGER