UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

VALERIE A. SHORE,

               Plaintiff,

      v.                                                               No. 04 CV 4152 (RJS)

PAINEWEBBER LONG TERM DISABILITY                ECF Document
PLAN, *et al.*.

               Defendants.

-------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION
FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

Rosen Preminger & Bloom LLP
708 Third Avenue, Suite 1600
New York, NY 10017

Attorneys for Plaintiff

## TABLE OF CONTENTS

                                                                                        **Page**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ...........................................................................................................1

I.      PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES
        AND REIMBURSMENT OF HER COSTS ......................................................1

        1.      Bad Faith or Culpability ............................................................2

                A.      The Plan's Use of the Department of Labor's Dictionary of
                        Occupational Titles to Deny Plaintiff Benefits Requires
                        a Finding of Culpability .............................................................2

                B.      The Plan's Failure to Provide a Full and Fair Review Requires
                        a Finding of Culpability .............................................................5

        2.      The Ability of the Offending Party to Satisfy an Award of Attorney's Fees .......13

        3.      Whether an Award of Fees Would Deter Other Persons from Acting
                Similarly Under Like Circumstances ................................................13

        4.      The Relative Merits of the Parties' Positions ......................................14

        5.      Whether the Action Conferred a Common Benefit on a Group of Pension
                Plan Participants ......................................................................16

II.     PLAINTIFF SHOULD BE AWARDED ATTORNEY'S FEES AND COSTS IN
        THE AMOUNTS SOUGHT ...........................................................................18

CONCLUSION .........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alternative Care Systems v. Metropolitan Life Insurance Company*, No. 92 Civ. 7208 (RPP), 1996 U.S. Dist LEXIS 1705 (S.D.N.Y. Feb. 15, 1996) ............................................................. 13

*Amato v. Bernard,* 618 F.2d 559 (9th Cir. 1980) .......................................................... 6

*Banyai v. Mazur*, 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 25272 (S.D.N.Y. March 30, 2007) ............................................................................................. 18

*Birmingham v. SoGen-Swiss Int'l Corp. Ret. Plan*, 718 F.2d 515 (2d Cir. 1983) .......................... 2

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) ...................................................... 11

*Blum v. Stenson*, 465 U.S. at 895 ............................................................................................. 18

*Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461 (9th Cir. 1997) ...................................... 9

*Bowman v. Reliance Standard Life Ins. Co.*, No. 02 C 6188, 2003 U.S. Dist. LEXIS 4398 (N.D Ill. March 21, 2003) ....................................................................................................... 12

*Carter v. Montgomery Ward & Co.*, 76 F.R.D. 565 (E.D. Tenn. 1977) ........................................ 13

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F. 2d 869 (2d Cir. 1987) ............... 2, 17

*Citrin v. Erikson*, 918 F. Supp. 792 (S.D.N.Y. 1996) ............................................................. 2, 14

*Cohen v. Metropolitan Life Ins. Co.*, 00 Civ. 6112 (LTS)(FM), 2007 U.S. Dist. LEXIS 86099 (S.D.N.Y. Nov. 21, 2007) ............................................................. 3, 5, 15, 17

*Conrad v. Reliance Standard Life Ins. Co.*, 292 F. Supp. 2d 333 (D. Mass 2003) ................. 12, 13

*Cook v. The New York Times Co. Long-Term Disability Plan*, 02 Civ. 9154, 2004 U.S. Dist. LEXIS 8306 (S.D.N.Y. Apr. 13, 2004) ................................................................................. 15

*Courter v. First UNUM Life Ins. Co.*, 159 Fed. Appx. 213, 2005 U.S. App. LEXIS 27395 (2d Cir. Dec. 14, 2005) ........................................................................................................... 8

*Couture v. UNUM Provident Corp.*, No. 02 Civ. 7392 (CM), 2004 U.S. Dist. LEXIS 7309 (S.D.N.Y. April 13, 2003) ....................................................................................................... 11

*Cruz v. Local Union Number 3 of the Int'l Union of Elec. Workers*, 34 F.3d 1148
(2d Cir. 1994) ................................................................................................18

*DeFelice v. American Int'l Life Assurance Co. of New York*, 112 F.2d 61 (2d Cir. 1997) .......... 8

*Dionida v. Reliance Std. Life Ins. Co.*, 50 F. Supp. 2d 934 (N.D. Cal. 1999) ............................... 4

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)................................................... 8, 9

*Ford v. New York Central Teamsters Pension Fund*, 506 F. Supp. 180 (W.D.N.Y. 1980),
aff'd 642 F.2d 664 (2d Cir. 1981)................................................................. 2, 13, 17

*Ford v. New York Central Teamsters Pension Fund*, 642 F.2d 664, 665 (2d Cir. 1981) ............. 16

*Gennamore v. Buffalo Sheet Metals, Inc.*, 568 F. Supp. 931 (S.D.N.Y. 1983) .............................. 2

*Grossmuller v. International Union*, 715 F.2d 853 (3rd Cir. 1983) ............................................... 7

*Gunn v. Reliance Standard Life Ins. Co.*, 399 F. Supp. 2d 1095 (C.D. Cal. 2005) ...................... 12

*Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685 (7th Cir. 1992)......................................................... 7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................. 18

*Hirt v. The Equitable Retirement Plan for Employees, Managers and Agents*,
01 Civ. 7920 (AKH) .................................................................................................. 19

*In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436 (S.D.N.Y. 2004)......... 20

*J.P. Sedlack Associates v. Connecticut Life & Casualty Ins. Co.*, 3:98CV145 (DFM),
2000 U.S. Dist LEXIS 18947 (D. Conn. March 31, 2000)....................................... 18

*Juliano v. The Health Maintenance Org. of New Jersey, Inc.*, 221 F.3d 279
(2d Cir. 2000)....................................................................................................... 7, 10

*Kayes v. Pacific Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995) ....................................................... 14

*Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588 (2d Cir. 1993) .............................. 6

*Killian v. Healthsource Provident Adm'rs*, 152 F.3d 514 (6th Cir. 1998) .................................... 11

*Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243 (2d Cir. 1999)......................... 3, 4

*Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381 (3rd Cir. 2003) ...................................... 4

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998)...................................................... 18

*Leva v. First Unum Life Insurance Company*, 96 Civ. 8590 (DC), 1999 U.S. Dist. LEXIS 6713 (S.D.N.Y. May 11, 1999).................................................................................. 17

*Locher v. Unum Life Ins. Co.*, 389 F.3d 288 (2d Cir. 2004)......................................... 17

*McCloskey v. Reliance Standard Life Ins. Co.*, 02:03cv579, 2006 U.S. Dist. LEXIS 10699 (W.D. Pa. March 16, 2006)...................................................................................... 4

*Miller v. Potok*, 72 F.3d 1066 (2d Cir. 1995) .......................................................... 14

*Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) .................................................... 18

*Nichols v. The Prudential Ins. Co. of America*, 406 F.3d 98 (2d Cir. 2005) ............... 10

*Omasta v. The Choices Benefit Plan*, 352 F. Supp. 2d 1201 (D. Utah 2004)............... 12

*Palmiotti v. Metropolitan Life Ins. Co.*, 04 Civ. 718, 2006 U.S. Dist. LEXIS 37490 (S.D.N.Y. June 9, 2006).................................................................................................. 15

*Peck v. Aetna Life Ins. Co.*, 495 F. Supp. 2d 271 (D. Conn. 2007) ............................ 4

*Richardson v. Central States, Southeast & Southwest Pension Fund*, 645 F.2d 660 (8th Cir. 1981)................................................................................................................ 7

*Salovaara v. Eckert*, 222 F.3d 19 (2d Cir. 2000)....................................................... 3

*Sansevera v. E.I. DuPont de Nemours & Co.*, 859 F. Supp. 106 (S.D.N.Y. 1994) ...... 15

*Shore v. PaineWebber Long Term Disability Plan*, 04-CV-4152 (KMK), 2007 U.S. Dist. LEXIS 77039 (S.D.N.Y. October 15, 2007)...................................... 1, 3, 4, 10

*Smetana v. Reliance Standard Life Ins. Co.*, No. 01-CV-4339, 2003 U.S. Dist. LEXIS 19564 (E.D. Pa. Sept. 30, 2003) ................................................................................. 12

*Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587 (9th Cir. 1984) ........................... 2, 17

*Smith v. Reliance Standard Life Ins. Co.*, 350 F. Supp. 2d 993 (S.D. Fla. 2004)............ 5

*Veltri v. Building Service 32B-J Pension Fund*, 02 Civ. 4200 (HB), 2004 U.S. Dist. LEXIS 6834 (S.D.N.Y. Apr. 19, 2004)....................................................................... 3, 5

*Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154 (4th Cir. 1993)................... 6

*Wein v. Prudential; Ins. Co. of Am.*, 03-CV-6526 (NGG) (CLP), 2006 U.S. Dist. LEXIS 73308 (E.D.N.Y. Oct. 2, 2006)......................................................................... 17

*Weinberger v. Reliance Standard Life Ins. Co.*, 54 Fed. Appx. 553, 2002 U.S. App. LEXIS 24667 (3rd Cir. Dec. 6, 2002) ................................................................................ 4

*Winkler v. Metropolitan Life Ins. Co.*, 03 Civ. 9656 (SAS), 2006 U.S. Dist. LEXIS 56464 (S.D.N.Y. Aug.. 10, 2006) .......................................................................... 15, 19

*Wolfe v. J.C. Penney Co.*, 710 F.2d 388 (7th Cir. 1983) .................................................. 7

*Zavora v. Paul Revere Life Ins.*, 145 F.3d 1118 (9th Cir. 1998) .................................. 11

**Statutes**

29 U.S.C. § 186(c) ........................................................................................................... 14

ERISA § 3(1), 29 U.S.C. § 1002(1) .................................................................................. 5

ERISA § 3(2), 29 U.S.C. § 1002(2) .................................................................................. 5

ERISA § 102, 29 U.S.C. § 1022 ...................................................................................... 11

ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) ........................................................ 1, 14, 16

ERISA § 503, 29 U.S.C. § 1133 ........................................................................................ 6

**Other Authorities**

Cool Hand Luke (Warner Bros. 1967) ............................................................................... 9

Legislative History of the Employee Retirement Income Security Act of 1974 (GPO 1976) .............................................................................................................. 5, 15

John H. Langbein, "Trust Law as Regulatory Law:  The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA," 101 *Northwestern University Law Review* 1315 (Spring 2007) ................................................................................................................ 8

**Regulations**

29 C.F.R. § 2560.503-1(b) ................................................................................................. 9

29 C.F.R. § 2560.503-1(e) ............................................................................................... 10

29 C.F.R. § 2560.503-1(f) .......................................................................................... 8, 10

29 C.F.R. § 2560.503-1(g) ............................................................................................... 10

29 C.F.R. § 2560.501-1(g)(1) ........................................................................................... 3

## PRELIMINARY STATEMENT

By Opinion and Order filed October 15, 2007, *Shore v. PaineWebber Long Term Disability Plan*, 04-CV-4152 (KMK), 2007 U.S. Dist. LEXIS 77039 (S.D.N.Y. October 15, 2007), the Honorable Kenneth M. Karas denied the parties' cross-motions for summary judgment insofar as they sought a resolution of this action on the merits. The Court found that the defendants PaineWebber Long Term Disability Plan's (the "Plan") and Reliance Standard Life Insurance Company's termination of plaintiff's long term disability benefits was arbitrary and remanded this matter to the Plan Administrator with directions to reevaluate plaintiff's claim, *inter alia*, based on the actual circumstances of her last occupation rather than the inapplicable occupational definition the Plan Administrator had used to deny benefits. *Id.* at *46-7.

Plaintiff then requested a pre-motion conference with respect to her prospective motion for attorney's fees and costs. Shortly thereafter this action was transferred to the Honorable Richard J. Sullivan who held a conference on November 20, 2007, with respect to the issue of the propriety of such a motion in light of defendants' assertion that it was premature. At the conclusion of that conference, the Court set a schedule for briefing the motion. Accordingly plaintiff submits this memorandum of law in support of her motion.

## ARGUMENT

### I.    PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES AND REIMBURSMENT OF HER COSTS

Section 502(g)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(g)(1), provides in pertinent part: "In any action under this title . . . by a participant . . ., the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The Second Circuit has held that "ERISA's attorney's fee provisions

must be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved." *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F. 2d 869, 872 (2d Cir. 1987), citing *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589-90 (9th Cir. 1984). Absent a "particular justification for not doing so," fees should be awarded to a prevailing plaintiff in an ERISA action. *Birmingham v. SoGen-Swiss Int'l Corp. Ret. Plan*, 718 F.2d 515, 523 (2d Cir. 1983).

The Second Circuit Court has adopted the following five factors which courts are to use as a guide in deciding whether to award attorney's fees under ERISA:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless*, 815 F. 2d 869, 871 (2d Cir.1987), citing *Ford v. New York Central Teamsters Pension Fund*, 506 F. Supp. 180, 183 (W.D.N.Y. 1980), aff'd 642 F.2d 664 (2d Cir. 1981) (per curiam). In applying these factors, the district court must keep ERISA's remedial purposes in mind because ERISA "is to afford [participants and beneficiaries] effective access to federal courts." *Smith*, 746 F.2d at 589.

1.    **Bad Faith or Culpability**

      A.    The Plan's Use of the Department of Labor's Dictionary of Occupational Titles to Deny Plaintiff Benefits Requires a Finding of Culpability

A showing of bad faith is not required. *Gennamore v. Buffalo Sheet Metals, Inc.*, 568 F. Supp. 931, 936 (S.D.N.Y. 1983). "Instead, a party moving for attorney's fees may demonstrate that the offending party was culpable or at fault in causing the dispute underlying the motion for attorneys' fees . . . ." *Citrin v. Erikson*, 918 F. Supp. 792, 800 (S.D.N.Y. 1996) (citations omitted). A defendant is culpable where it "violated ERISA, thereby depriving plaintiffs of

2

rights under a pension plan and violating a Congressional mandate." *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000).

This Court has already held that defendants' decision to deny benefits was arbitrary and capricious, *Shore* at *36, *41, thereby satisfying the "culpability" requirement. "A finding of culpability involves more than mere negligence, but does not require malice or an ulterior motive." *Veltri v. Building Service 32B-J Pension Fund*, 02 Civ. 4200 (HB), 2004 U.S. Dist. LEXIS 6834, at *6 (S.D.N.Y. Apr. 19, 2004). "An arbitrary and capricious determination by an administrator or a failure to conduct a full and fair review[1] in connection with a plaintiff's claim for benefits satisfies the culpability factor. *Cohen v. Metropolitan Life Ins. Co.*, 00 Civ. 6112 (LTS)(FM), 2007 U.S. Dist. LEXIS 86099 (S.D.N.Y. Nov. 21, 2007), at *7, citing *Veltri* at *6-7.

Here, the Court found that the termination of plaintiff's benefits was arbitrary in large part because of it "relied upon the Department of Labor's Dictionary of Occupational Titles ("DOT") in determining the duties of Plaintiff's occupation[,]" *Shore* at *17, rather than the duties of "'a position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties.'"[2] *Id.* at *36, quoting *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir. 1999). Because there was no basis for the failure to follow *Kinstler, id.* at *41, the Court held that the use of the DOT to establish the duties of plaintiff's job was arbitrary and capricious. *Id.*

Further evidence of defendants' culpability, and, indeed, their bad faith, is that First Reliance Standard Life Insurance. Company was the defendant in *Kinstler*. Reliance Standard

---

[1] A "full and fair review" is required by the Department of Labor's claims procedure regulation, 29 C.F.R. § 2560.501-1(g)(1). An arbitrary decision fails to satisfy this requirement.
[2] Further evidence of culpability is the Court's finding that despite defendants' protestations to the contrary, there is no evidence in the record that plaintiff's actual duties were considered in the review of her claim. *Shore* at *40.

3

Life Insurance Company ("Reliance Standard"), the defendant herein,

> provides insurance products and services in all states (except New York), the District of Columbia, Puerto Rico and the U.S. Virgin Islands. In New York, insurance products and services are provided through First Reliance Standard Life Insurance. Company[.]

www.rsli.com/about/. Thus, Reliance Standard not only **should have known** about the Second

Circuit's decision in *Kinstler*, **it was on actual notice** having been the functional defendant in

that case. Moreover, because plaintiff had been employed in New York, Reliance Standard was

certainly aware that Second Circuit law would be applicable to plaintiff's claim.

Nor is this the first time since the decision in *Kinstler* that Reliance Standard has been

called to task for using the DOT.

> The limitations of using the DOT have been noted by other courts. *See, e.g. Peck* [*v. Aetna Life Ins. Co.*], 495 F. Supp. 2d [271,] . . . 277 [(D. Conn. 2007)], 2007 U.S. Dist. LEXIS 40031 ("Generally, the DOT 'groups various jobs into occupation based on their similarities, and thus an occupation in the DOT covers more than one particular job.'" (quoting *Dionida v. Reliance Std. Life Ins. Co.*, 50 F. Supp. 2d 934, 940 n.4 (N.D. Cal. 1999) (internal quotation marks omitted)).

*Shore* at *38 n.7. In a case strikingly similar in its facts, *Weinberger v. Reliance Standard Life*

*Ins. Co.*, 54 Fed. Appx. 553, 556-7, 2002 U.S. App. LEXIS 24667, at **6-7 (3rd Cir. Dec. 6,

2002), the Third Circuit held that "Reliance's utilization of this generic agency description, with

its assumption of a sedentary occupation with minimal physical demands, appears inappropriate,

particularly in light of Weinberger's provision . . . of a job description setting forth the actual

requirements of his position, including his travel requirements." *See also Lasser v. Reliance*

*Standard Life Ins. Co.*, 344 F.3d 381, 286 (3rd Cir. 2003) ("Regular occupation" is the usual

work that the insured is actually performing immediately before the onset of disability.");

*McCloskey v. Reliance Standard Life Ins. Co.*, 02:03cv579, 2006 U.S. Dist. LEXIS 10699, at *22

(W.D. Pa. March 16, 2006) ("The [DOT] definition of Plaintiff's regular occupation as 'light

duty work' is in direct conflict with [his employer's] description of the physical requirements of

his position . . . ."); *Smith v. Reliance Standard Life Ins. Co.*, 350 F. Supp. 2d 993, 999 (S.D. Fla.

2004) ("Reliance's application of the DOT standard is wrong."). Yet despite having been

repeatedly rebuffed for using the DOT, Reliance Standard continued to do so and, as here,

continues to attempt to defend its use.

        B.     The Plan's Failure to Provide a Full and Fair Review Requires a Finding
                of Culpability

     As set forth in n.1, *ante*, failure to provide the "full and fair review" required by the

Department of Labor's claims procedure regulation per force requires a finding that an adverse

benefit determination was arbitrary and capricious. *Cohen v. Metropolitan Life Ins. Co.*, 00 Civ.

6112 (LTS)(FM), 2007 U.S. Dist. LEXIS 86099 (S.D.N.Y. Nov. 21, 2007), at \*7, citing *Veltri* at

\*6-7. Congress required claims procedures because it:

> found that a substantial number of plans fail to provide adequate and fair procedures to
> participants and beneficiaries when their benefit claims or applications are denied. [The
> claims procedure requirement] is intended to rectify this inequity by requiring plans to
> provide adequate notice in writing to participants or beneficiaries whose benefits have
> been denied, setting forth the specific reasons in terms that can be readily grasped by the
> participant, and to afford a reasonable opportunity for a full and fair review by the plan
> administrator of any decision denying benefits.

I Legislative History of the Employee Retirement Income Security Act of 1974 (GPO 1976)

("Leg. Hist.") at 620-21.

     Further, Congress established claims procedures because it thought "all workers and plan

beneficiaries should have the opportunity to resolve any controversy over their retirement

benefits ... in an inexpensive and expeditious manner." *Id.* at 1185.[3]  See also III Leg. Hist. at

4823 (disputes to be resolved "efficiently and expeditiously"); *Kennedy v. Empire Blue Cross*

---

[3] In that the claims procedures apply to "welfare plans," *see* ERISA § 3(1), 29 U.S.C. § 1002(1),
as well as "pension plans," *see* ERISA § 3(2), 29 U.S.C. § 1002(2), Congress obviously also
thought welfare plan participants and beneficiaries were entitled to the same "inexpensive and
expeditious" method of resolving benefit disputes. The Plan at issue herein is a welfare plan
within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

*and Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993), quoting *Amato v. Bernard,* 618 F.2d 559, 567
(9th Cir. 1980) (claims procedures are intended to "provide a nonadversarial method of claims
settlement; and to minimize costs of claims settlement for all concerned."). Congress was not
only concerned about cost to participants and beneficiaries. The Senate version of ERISA
contained an arbitration provision that was eliminated in Conference because the House thought
arbitration "might be too costly to plans . . .." *Id.* at 4769. Thus, ERISA, as enacted, took into
account the cost concerns of plans and their sponsoring employers.

ERISA § 503, 29 U.S.C. § 1133, provides:

In accordance with regulations of the Secretary,[4] every employee benefit plan
shall--

(1) provide adequate notice in writing to any participant or beneficiary
whose claim for benefits under the plan has been denied, setting forth the specific reasons
for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for
benefits has been denied for a full and fair review by the appropriate named fiduciary of
the decision denying the claim.

As the Fourth Circuit has noted, "these procedural guidelines are at the foundation of
ERISA." *See Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 157 (4th Cir. 1993);
*see also Grossmuller v. International Union*, 715 F.2d 853, 857 (3rd Cir. 1983) ("full and fair
review" requirement must be construed "to protect a plan participant from arbitrary or
unprincipled decision-making").

The Third Circuit has explained that the purpose of these regulations is to provide plan
participants with the information they need to obtain meaningful reviews of benefit denials: an
adequate explanation of the denial, a record of what evidence the plan relied upon in denying the
benefits, an opportunity to address the accuracy and reliability of that evidence, and an

---

[4] In essence, the Department of Labor was granted legislative rulemaking authority in this area.

opportunity to have the plan consider the participants' evidence prior to reaching its decision. *Grossmuller*, 715 F.2d at 858 n.5.

These requirements also ensure that when participants appeal their denials to the plan administrator, they will be able to address the determinative issues. *See Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 392 (7th Cir. 1983). ERISA's due process requirements "enable[] a participant both to appreciate the fatal inadequacy of his claim as it stands and to gain a meaningful review by knowing with what to supplement the record." *Id.* at 392; *see also Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992); *Richardson v. Central States, Southeast & Southwest Pension Fund*, 645 F.2d 660, 665 (8th Cir. 1981) (stating that claim and review rules enable participants to "process their claims efficiently and fairly" and to prepare adequately "for any further administrative review, as well as appeal to the federal courts"); *Juliano v. The Health Maintenance Org. of New Jersey, Inc.*, 221 F.3d 279, 290-91 (2d Cir. 2000) ("[T]he notice and review principles of ERISA require that a plan member be given the ability and opportunity to respond effectively to an HMO's denial of benefits, which includes the ability to take whatever further action might be necessary to entitle him or her to the benefits in question. An HMO cannot be rewarded for playing a game of 'hide the ball' with its participants . . ..")

The Department of Labor's regulations (the "Regulations"[5]) are thus a congressionally mandated regime to provide plan participants and beneficiaries with a fair procedure for resolving benefit disputes, which might, in most cases, therefore not result in litigation, but which was thorough, efficient, expeditious and less costly than alternatives that Congress

---

[5] References herein are to the Regulations as in effect at the time of the termination of plaintiff's benefits and the appeal of the termination. Amended regulations were effective July 1, 2002. *See* 66 Fed. Reg. 35,886.

considered. Unfortunately, as here, those regulations have been too often honored in the breach by plans.[6]

Unfortunately, the claims procedure which was followed in this case is not unusual. As shown, this is not the only ERISA plan which Reliance insures and for which it makes eligibility determinations. Reliance obviously does not comply with ERISA's claims procedure requirement of a full and fair review because it does not want to. Compliance would obviously require more training of its employees, more paperwork, and more expense for physicians who would actually have to examine claimants and thoroughly review their medical records. Also, and perhaps more to the point, Reliance would have to grant more claims.[7]

> "What we got here," said Strother Martin, "is a failure to communicate."* This is an all-too-common occurrence when ERISA-covered health benefit plans deny claims. While a health plan administrator may - indeed must - deny benefits that are not covered by the plan, it must couch its rulings in terms that are responsive and intelligible to the ordinary reader. See 29 C.F.R. § 2560.503-1(f). If the plan is unable to make a rational decision on the basis of the materials submitted by the claimant, it must explain what else it needs. *Id.* If ERISA plan administrators want to enjoy the deference to which they are statutorily

---

[6] For a thorough discussion of the abuse of ERISA's claims procedures by, in particular, disability insurance companies, *see* John H. Langbein, "Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA," 101 *Northwestern University Law Review* 1315 (Spring 2007) "[C]onflicted plan decision making. is a structural feature or ERISA plan administration. The danger pervades the ERISA-plan world that a self-interested plan decisionmaker will take advantage of its license under [*Firestone Tire & Rubber Co. v.*] *Bruch*[, 489 U.S. 101 (1989)] to line its own pockets by denying meritorious claims." *Id.* at 1321. The Second Circuit has held that where, as here, it was the employees of the potentially liable insurance company who denied benefits, a conflict always exists. *DeFelice v. American Int'l Life Assurance Co. of New York*, 112 F.2d 61 (2d Cir. 1997).

[7] Reliance Standard's decision to terminate plaintiff's benefits in June 2000 does not explain in what way, if any, her condition had improved from that which had caused Reliance to grant benefits. *See Courter v. First UNUM Life Ins. Co.*, 159 Fed. Appx. 213, 2005 U.S. App. LEXIS 27395, at *214-15 (2d Cir. Dec. 14, 2005) ("First Unum had the burden of showing that Courter could actually return to work before it terminated his benefits in June 2002."). Because the termination decision was only 10 months after benefits were first approved, it would appear that the review of Plaintiff's status was prompted more by fiscal concerns than any doubt as to her physical condition. In June 2000, at plaintiff's monthly benefit rate of $4,239.05, Reliance Standard was looking at future payments totaling $1,089,435.80.

entitled, they must comply with these simple, common-sense requirements embodied in the regulations and our caselaw. The plan here did not.

(*Cool Hand Luke (Warner Bros. 1967).)

*Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1465 (9th Cir. 1997). In light of the plan's failure to comply with ERISA's claims procedures, the court in *Booton* granted summary judgment to the plaintiff. *Id.*

The Second Circuit has held that the failure to issue decisions within the Regulations' time constraints could not prevent a claimant who had not exhausted the plan's claims procedures from commencing litigation even if the plan had substantially complied with the Regulations, because to so hold "would be irreconcilable with the plain language of the regulation ...." *Nichols v. The Prudential Ins. Co. of America*, 406 F.3d 98, 107 (2d Cir. 2005). *Nichols* did not reach the issue of whether substantial compliance with the Regulations is otherwise a legitimate doctrine, except to hold that if deferential review by the Courts were otherwise the applicable standard,[8] *de novo* review would nonetheless apply if the denial of benefits was achieved by the passage of time rather than by the decision maker's exercise of discretion in denying benefits. *Id.* at 109.

The language in *Nichols* that finding substantial compliance "would be irreconcilable with the plain language of the regulation" finds support in the language of the Regulations themselves. 29 C.F.R. § 2560.503-1(b), titled "Obligation to establish a reasonable claims procedure," states: "Every employee benefit plan shall establish and maintain reasonable claims procedures." That section goes on to say, in part, that "(1) A claims procedure will be deemed to

---

[8] Courts are to apply an arbitrary and capricious standard of review to claim denials if the plan document grants discretion to the decision maker to make eligibility determinations and/or interpret the plan's terms and the decision maker has exercised that discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

be reasonable only if it: (i) Complies with the provisions of paragraphs (d) through (h) of this section[.]" While not having needed to decide the issue of whether substantial compliance would ever be a viable argument, *Nichols* does stand for the proposition that any such argument must be reconcilable with the language of the Regulations. One must assume that this refers both to the claims procedure as written and the claims procedure in practice. Thus, substantial compliance would seem to be insufficient simply because it would not be "reasonable" within the meaning of the Regulations.

Claims procedure is a two step process according to the Regulations: (1) an initial step to determine entitlement to benefits (29 C.F.R. 2560.503-1(d)) and notification of the decision as well as notification of the right to appeal a denial of benefits (*id.* at ¶ (e) and (f)); and (2) a full and fair review (*id.* at (g)). Because there are only these two mandated steps, the requirement of 29 C.F.R. 2560.503-1(f)(1) that the notice of denial must contain the "specific reason or reasons for the denial" is crucial. As the Second Circuit held in *Juliano v. The Health Maintenance Org. of New Jersey, Inc.*, 221 F.3d 279, 290-91 (2d Cir. 2000), only if the claimant is provided with all the reasons for the denial can s/he effectively prosecute an appeal.

Unfortunately, plans, as here, frequently assert new reasons for the denial on appeal thus precluding any effective response by the claimant. The Court noted this when it found that plaintiff's declaration in support of her summary judgment motion rebutting Dr. Hauptman's findings was one reason why the Court remanded rather than deciding the merits of plaintiff's claim. *Shore* at *45.[9] Regarding defendants' culpability, it may be noted that plaintiff should not have had to wait until after litigation was commenced to rebut Dr. Hauptman's findings. Her prior attorneys had requested a further review after plaintiff's appeal was denied and Reliance

---

[9] As she did on her motion for summary judgment, plaintiff contends that her claims should have been decided on the merits and that a remand was inappropriate.

Standard responded by letter dated May 1, 2001 that ERISA "only provides for one appeal, and, according to our records, this appeal has already been provided . . .. We are therefore returning your request for another appeal (along with any enclosures) as the claim is now closed." AR0004.[10]  Obviously, if defendants had permitted plaintiff to submit her rebuttal to Dr. Hauptman's findings at that time, this action might not have been required at all.[11]

> Reliance engaged Dr. William Hauptman to conduct a review of Plaintiff's claims. Dr. Hauptman is board certified in internal medicine, gastroenterology, and quality assurance and utilization review. (AR 12.)  In his five-hour review of Plaintiff's claims, Dr. Hauptman did not examine Plaintiff or contact any of Plaintiff's treating physicians.

*Shore* at \*14-15 (footnote omitted). This, in and of itself, establishes culpability.

First, Dr. Hauptman is not board certified in orthopedics, as were the physicians whose reports plaintiff submitted. *See e.g.* AR0439-0440; AR448-56. *See also Zavora v. Paul Revere Life Ins.*, 145 F.3d 1118, 1122-23 (9th Cir. 1998) (finding it an abuse of discretion to rely on non-treating, nonspecialist doctors, who failed to confer with the specialist treating physician and failed to examine the claimant).  While the Plan was not required to give deference to plaintiff's treating physicians, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003), it could not ignore them.  *Id.*  "The fact that the treating physician rule is inapplicable does not in any way suggest that plaintiff's doctors' opinions are irrelevant."  *Couture v. UNUM Provident Corp.*, No. 02 Civ. 7392 (CM), 2004 U.S. Dist. LEXIS 7309, \*32 (S.D.N.Y. April 13, 2003).

---

[10] This reference is to the claims procedure record, a copy of which was filed as Exhibit 5 in support of plaintiff's motion for summary judgment.

[11] The failure to consider further evidence submitted by plaintiff is even more egregious when one considers that plaintiff was never provided with the Plan's claims procedure upon which the defendants purportedly relied in refusing to consider that evidence. *See* Plaintiff's Memorandum of Law in Support of Her Motion for Summary Judgment at 3.  However, pursuant to ERISA § 102, 29 U.S.C. § 1022, summary plan descriptions are required to set forth a plan's claims procedures. *See Killian v. Healthsource Provident Adm'rs*, 152 F.3d 514, 519-22 (6th Cir. 1998).

Yet Dr. Hauptman fails to mention any of plaintiff's treating physicians' reports nor did he contact any of them.

Also, it should be noted that Dr. Hauptman has been heavily criticized by several courts as being biased in favor of Reliance Standard. *See Conrad v. Reliance Standard Life Ins. Co.*, 292 F. Supp. 2d 333, 238 (D. Mass 2003) ("the reports Dr. Hauptman generated betray a palpable bias in favor of rejecting the claim"); *Smetana v. Reliance Standard Life Ins. Co.*, No. 01-CV-4339, 2003 U.S. Dist. LEXIS 19564, at *22-24 (E.D. Pa. Sept. 30, 2003) ("Dr. Hauptman's paper review is troubling to this Court. Dr. Hauptman did not examine Plaintiff personally, [and] the Court finds it suspect that Defendant would have so easily accepted his report over the findings of Plaintiff's treating physicians, and Plaintiff's subjective complaints of pain. . . . The conclusion reached by Dr. Hauptman is in direct conflict with the opinions of the Plaintiff's physicians and carry some level of bias."); *Bowman v. Reliance Standard Life Ins. Co.*, No. 02 C 6188, 2003 U.S. Dist. LEXIS 4398, at *20 (N.D Ill. March 21, 2003) (noting that defendant's reliance on Dr. Hauptman was "less than convincing" and that Dr. Hauptman's "opinion evidence is unimpressive, and somewhat unsupported, as compared with the rest of the record"); *Omasta v. The Choices Benefit Plan*, 352 F. Supp. 2d 1201, 1209 (D. Utah 2004) ("Dr. Hauptman's opinion . . . is not reasonably based in the record. [His] review consists of discounting all of the substantial information supporting Plaintiff's claim of disability."); *Gunn v. Reliance Standard Life Ins. Co.*, 399 F. Supp. 2d 1095, 1102 n.5 (C.D. Cal. 2005) ("Reliance is the only insurance company for whom Dr. Hauptman works, and he derives approximately one-third of his income from his work with Reliance."); *id.* at 1105 n.8 ("The Court notes, however, that there is some evidence in the record in this action that suggests that Dr. Hauptman is still willing to base his conclusions almost exclusively on the most optimistic data available.")

(quoting *Conrad*, 292 F. Supp. 2d at 238). As in *Conrad*, Dr. Hauptman's report in the instant

case focused exclusively on information that was favorable to Reliance. "Repeatedly, Dr.

Hauptman's conclusions select for emphasis just one or two elements of a medical report, while

ignoring additional facts and important context." *Conrad*, 292 F. Supp. 2d at 238. All of these

courts found that Reliance Standard had abused its discretion in denying disability benefits based

on Dr. Hauptman's reports.

     For all the foregoing reasons, defendants should be found culpable.

     2.    **The Ability of the Offending Party to Satisfy an Award of Attorney's Fees**

     As to the second factor, plaintiff has no knowledge of defendants' financial resources, but

expects that they could satisfy an award. ERISA contains a fee shifting provision "to enable

pension claimants to obtain competent counsel and to distribute the economic burden of

litigation in a fair manner." *Ford*, 506 F. Supp. 180, 182 (W.D.N.Y. 1980), citing *Carter v.

Montgomery Ward & Co.*, 76 F.R.D. 565, 568 (E.D. Tenn. 1977).

     3.    **Whether an Award of Fees Would Deter Other Persons from Acting**
               **Similarly Under Like Circumstances**

     With respect to the third factor, an award of fees should certainly deter Reliance Standard

and other administrators from denying claims for disability benefits based upon the arbitrary

adoption of inapplicable occupational definitions. In *Alternative Care Systems v. Metropolitan

Life Insurance Company*, No. 92 Civ. 7208 (RPP), 1996 U.S. Dist LEXIS 1705 (S.D.N.Y. Feb.

15, 1996), as here, the defendants were found to have made a benefit determination in total

derogation of their statutory and regulatory obligations. In granting an award of fees, the court

stated at *17-18 that

> where the procedural error was significant and avoidable, an award of attorneys' fees to a
> plaintiff will deter careless administration and improve protection of employee rights.
> The deterrent value of the award and the clarification of the significance of procedural

compliance in the administration of ERISA health care plans, moreover, contribute to the well-being of other plan recipients.

Similarly,

[t]he knowledge that courts are willing to award attorneys' fees against those who unjustifiably frustrate the purpose and the operation of trust funds established pursuant to [Taft-Hartley Act] section 302(c)[12] and ERISA will dissuade other trust administrators from engaging in the sort of unwarranted conduct that Respondents exhibited in the instant case.

*Citrin v. Erikson*, 918 F. Supp. 792, 801 (S.D.N.Y. 1996) (citations omitted). In addition, the

knowledge that fees and costs will be imposed acts as "a powerful deterrent." *Id.*

### 4.    The Relative Merits of the Parties' Positions

The fact that the Court remanded rather than decided the ultimate question of entitlement

to benefits does not alter that the fourth factor favors plaintiff. First, because ERISA § 502(g)(1)

authorizes an award of fees to "either party," a plaintiff need not even be a prevailing party to

receive such an award. *Miller v. Potok*, 72 F.3d 1066, 1074 (2d Cir. 1995). Second,

the district court may in fact determine that Miller is the prevailing party to the extent that her motion for summary judgment claimed that the Fund's denial was arbitrary and capricious.[13] *See Sansevera v. E.I. DuPont de Nemours & Co.*, 859 F. Supp. 106, 117 (S.D.N.Y. 1994) (granting attorneys' fees to plaintiff whose summary judgment motion was partially granted as to claim that Plan Board acted arbitrarily and capriciously in denying benefits).

*Id. See also Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1469 (9th Cir. 1995) (an award of

interim attorney's fees is permitted by ERISA).

Many district courts have granted attorney's fees under ERISA when the result of a

plaintiff's litigation has been a remand because of an arbitrary and capricious determination or

---

[12] 29 U.S.C. § 186(c).
[13] As here.

14

failure to conduct a full and fair review,[14] rather than a final decision as to eligibility for benefits. *See Sansevera v. E.I. DuPont de Nemours & Co.*, 859 F. Supp. 106, 117 (S.D.N.Y. 1994) ("As a result of the Board's actions, Sansevera was forced to bring this action in order to receive the fair consideration to which he is entitled.  An award of attorney's fees and costs is necessary both to relieve Sansevera of the financial burden undertaken to pursue this action, and to deter other employers from similarly denying the applicant a fair consideration of his or her claim."); *Cohen v. Metropolitan Life Ins. Co.*, 00 Civ. 6112 (LTS)(FM), 2007 U.S. Dist. LEXIS 86099, at *5, *7-8 (S.D.N.Y. Nov. 21,2007) (finding plaintiff had prevailed on the merits "on the key issue of Arbitrary and capricious action" and granting fees and costs in the amount of $141,533.27); *Winkler v. Metropolitan Life Ins. Co.*, 03 Civ. 9656 (SAS), 2006 U.S. Dist. LEXIS 56464, at *9-10 (S.D.N.Y. Aug.. 10, 2006) (granting attorney's fees and costs in the amount of $303,098.92). As the Honorable Gerard E. Lynch stated in *Cook v. The New York Times Co. Long-Term Disability Plan*, 02 Civ. 9154, 2004 U.S. Dist. LEXIS 8306, at *4-5 (S.D.N.Y. Apr. 13, 2004):

> Defendant's second argument is that because plaintiff was granted a remand instead of summary judgment, defendant should not be forced to pay fees, as plaintiff may never obtain the relief she seeks. . . .This is irrelevant. ERISA provides that a beneficiary may bring a civil lawsuit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Attorneys' fees in ERISA cases are not granted based on counsel's efforts to obtain disability benefits before a plan administrator, but based on their efforts to vindicate their clients' rights in court. See *id.* § 1132(g). Plaintiff sought benefits by applying to the Plan in the first instance, not to the Court. She succeeded in overturning the Plan's adverse determination, and in achieving a right to submit additional proof of disability to the Plan, and she will now return to seek those benefits there again.

Accordingly, the court granted attorney's fees and costs in the amount of $73,190.72. *Id.* at *6.

A shown above, ERISA's claims review procedure was enacted to ensure that plan

---

[14] As previously stated, such a determination establishes culpability for the purposes of an award of attorney's fees. *See e.g. Palmiotti v. Metropolitan Life Ins. Co.*, 04 Civ. 718, 2006 U.S. Dist. LEXIS 37490, at *2 (S.D.N.Y. June 9, 2006).

15

participants, such as plaintiff herein, have an opportunity to resolve their benefit claims

inexpensively and expeditiously. *See e.g.* III Leg. Hist. at 4823 (disputes to be resolved

"efficiently and expeditiously"). When a plan's denial of benefits is arbitrary and capricious or

otherwise fails to comply with the Regulations, the claimant is forced to undertake the time and

expense of litigation in order to receive the full and fair review the Regulations mandate, thereby

obviating the fundamental purposes of the claims procedure - speed and low cost. It is thus

entirely appropriate that the defendants be required to pay such a claimant's litigation fees and

costs.

5. **Whether the Action Conferred a Common Benefit on a Group of Pension Plan Participants**

As to the fifth factor, plaintiff concededly brought this action in order to obtain benefits

for herself, rather than to accomplish a broader remedial purpose. However, the fact that

plaintiff's primary intent was not to provide a "common benefit" does not foreclose an award of

fees, because all five factors need not be met. *See Ford v. New York Central Teamsters Pension

Fund*, 506 F. Supp. 180, 183 (W.D.N.Y. 1980), aff'd, 642 F.2d 664 (2d Cir. 1981) (per curiam);

*Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 590 (9th Cir. 1984).

This factor does not readily lend itself to individual benefit claims which constitute the

vast majority of ERISA litigation. Moreover, ERISA's attorney's fee provision does not

distinguish between individual benefit claims and claims that seek to vindicate the rights of

multiple participants and beneficiaries. It could not, therefore, have been Congress's intent to

impose greater burdens on securing attorney's fees on individual benefit claim plaintiffs than on

plaintiffs prosecuting broader claims.[15] This is undoubtedly why the Second Circuit held that

---

[15] Research has revealed no expression of congressional intent on this issue. *But see Ford v. New York Central Teamsters Pension Fund*, 506 F. Supp. 180, 182 (W.D.N.Y. 1980) (noting the

failure to confer a benefit on a group of participants does not preclude an award of fees.  *See*

*Ford v. New York Central Teamsters Pension Fund*, 642 F.2d 664, 665 (2d Cir. 1981).  Thus, the

fifth factor should not even be a consideration in an individual benefit claim case and a plaintiff

who has satisfied the first four factors should be granted fees.

Nonetheless, a "common benefit" has been provided as an ancillary product of the

litigation.  As one court pointed out, "plaintiff's successful challenge to the denial of her claim

for benefits will help encourage [First Unum] to consider these applications for long-term

disability with more care." *Leva v. First Unum Life Insurance Company*, 96 Civ. 8590 (DC),

1999 U.S. Dist. LEXIS 6713, at *4 (S.D.N.Y. May 11, 1999).  *See also Wein v. Prudential; Ins.*

*Co. of Am.*, 03-CV-6526 (NGG) (CLP), 2006 U.S. Dist. LEXIS 73308, at *41 (E.D.N.Y. Oct. 2,

2006) ("an award of attorney's fees would serve a purpose in encouraging Prudential to modify

its procedures for the better"); *Cohen v. Metropolitan Life Ins. Co.*, 00 Civ. 6112, 2007 U.S. Dist.

LEXIS 86099, at *8 ("The award of attorney's fees will promote thorough and fair review

processes relating to the determination of disability benefits, and thus have a deterrent effect on

insurers and claims processors that might neglect such duties.").  While the Second Circuit has

"not yet recognized such circumstances to satisfy the fifth factor," *Locher v. Unum Life Ins. Co.*,

389 F.3d 288, 299 (2d Cir. 2004), it has not rejected such a conclusion either.  In *Locher*, the

Second Circuit affirmed the decision below granting fees without discussing this factor.  *Id.*

Because plaintiff has satisfied all five *Chambless* factors, she should be awarded

attorney's fees and costs.

---

"broad language" of ERISA § 502(g)(1) and "Congress's apparent intent to relieve, at least to
some extent, the financial burden imposed on pension claimants by litigation"), aff'd 642 F.2d
664 (2d Cir. 1981).

## II.    PLAINTIFF SHOULD BE AWARDED ATTORNEY'S FEES AND COSTS IN THE AMOUNTS SOUGHT

Plaintiff seeks attorney's fees and reimbursement of costs in the current respective amounts of $95,183.00 and $2,152.46. Plaintiff will supplement this request after completion of reply papers, if any and argument of the motion, if any.[16]

> The process of determining a reasonable fee ordinarily begins with the court's calculation of a so-called "lodestar" figure, which is arrived at by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. [424,] 433 [(1983)]; *see Cruz v. Local Union Number 3 of the International Brotherhood of Electrical Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994). The lodestar should be based on "prevailing market rates," *Blum v. Stenson*, 465 U.S. at 895; and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment, *see Missouri v. Jenkins*, 491 U.S. 274, 283-84, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989). The court should include the number of hours claimed by plaintiffs' attorneys that are supported by time records, that are not excessive or duplicative, and that do not reflect work done only in connection with unrelated claims on which plaintiffs did not succeed.

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763-4 (2d Cir. 1998).

Plaintiff's attorneys' contemporary time and expense records are attached as Exhibits 3 and 4 to the accompanying Declaration of David S. Preminger ("Preminger Decl."). A review of the time records reflects no real overlap in hours billed. From the commencement of the attorney's involvement in April 2004 until mid-October 2004, virtually all time was billed by Rose Saxe. Mr. Preminger had the only other billable hours during this period and they totaled only 9.0 hours. Subsequently, all time was billed by Mr. Preminger except for 7.7 hours spent by Paula Ryan in drafting the Local Rule 56.1 counterstatement. As such, there should be no reduction for duplicative hours billed. *See J.P. Sedlack Associates v. Connecticut Life & Casualty Ins. Co.*, 3:98CV145 (DFM), 2000 U.S. Dist LEXIS 18947, at *22 (D. Conn. March

---

[16]An award of fees includes time spent preparing the motion for fees.

31, 2000) (declining to reduce fees as redundant because "[t]he court will not punish counsel for their thorough preparation and careful attention to detail.").

As set forth in the Preminger Decl. at ¶ 15, plaintiff seeks fees at the rates of $610.00 per hour for Mr. Preminger, $400.00 per hour for Ms. Ryan and $250.00 per hour for Ms. Saxe. These are current rates and not the historical rates set forth in the time records as provided for by *Blum, supra.*

Moreover, these are "prevailing market rates." *Id.* For example, by Order dated September 6, 2002, the Honorable Alvin K. Hellerstein appointed Mr. Preminger as Special Master in *Hirt v. The Equitable Retirement Plan for Employees, Managers and Agents*, 01 Civ. 7920 (AKH), a class action ERISA litigation. That Order set Mr. Preminger's compensation at $500.00 per hour. In March 2007, the Honorable Sidney H. Stein held that Mr. Preminger's 2005 hourly rate of $550.00 was "consistent with the "prevailing market rates" for attorneys of [his] experience that should be used to calculate the lodestar." *Banyai v. Mazur*, 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 25272, at *22 (S.D.N.Y. 2007) (citations omitted). The 10.9% increase in Mr. Preminger's billing rate over the past two years is certainly is in accord with the market.

Also as set forth in the Preminger Decl. at ¶ 15, the $400.00 per hour rate for Ms. Ryan and the $250.00 per hour rate for Ms. Saxe are consistent with prevailing market rates. For example, in *Winkler v. Metropolitan Life Ins. Co.*, 03 Civ. 9656 (SAS), 2006 U.S. District LEXIS 56464 (S.D.N.Y. Aug. 10, 2006), the Honorable Shira A. Scheindlin granted fees based on a $430.00 per hour rate for Scott M. Riemer, Esq. and a $280.00 per hour rate for Steven S. Diebert, Esq. *See* Mr. Riemer's Declaration in support of the motion for fees. [Dkt # 70] According to Mr. Riemer's Declaration, he is a 1983 law school graduate and Mr. Diebert is a

19

1997 law school graduate. Based on these rates, the rates billed by plaintiff's attorneys herein constitute prevailing market rates.

Plaintiff also seeks reimbursement of costs. Preminger Decl. at ¶ 17. Such costs as are sought herein for photocopying, postage, service of process, legal research and document production, etc. (*id.*) are "the type for which 'the paying, arms' length market' reimburses attorneys." *In re Global Crossing Securities and ERISA Litigation,* 225) F.R.D. 436, 468 (S.D.N.Y. 2004).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for an award of attorney's fees and reimbursement of expenses, currently in the respective amounts of $95,183.00 and $2,152.46, for a total of $97,335.46, should be granted in all respects together with such other and further relief as to this Court may seem just and proper.

Dated:    New York, New York             Rosen Preminger & Bloom LLP
            December 3, 2007              Attorneys for Plaintiff


By: */s/ David S. Preminger*
    David S. Preminger (DP 1057)
    708 Third Avenue, Suite 1600
    New York, New York 10017
    (212) 682-1900